Filed 5/28/13  P. v. Daniel CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>          Plaintiff and Respondent,<br><br>v.<br><br>JOHNATHAN PHILLIP DANIEL,<br><br>          Defendant and Appellant. | A136611<br><br>(Sonoma County<br>Super. Ct. No. SCR597295) |

Appellant Johnathan Phillip Daniel pled no contest to two counts of first degree robbery and admitted the truth of two firearm use enhancements.  A negotiated plea indicated a potential sentence of 16 years and 4 months.  (Pen. Code,[1] §§ 211, 459; former § 12022.53, subd. (b).)  The trial court rejected a request to withdraw his plea.  Daniel was sentenced to 16 years, 4 months in state prison for these two robberies and a probation violation matter.  He appeals, asking us to strike a term that he challenges as an

---

[1] All statutory references are to the Penal Code unless otherwise indicated.  Although several of the relevant statutes defining crimes, specifying enhancements or setting punishments have been amended since the dates of the 2011 charged offenses, we apply the version of those provisions in effect as of the date of the specific crime, to avoid imposition of an ex post facto law.  Our comparison of these provisions with the current versions of them satisfies us that current law is—for our purposes—substantially the same as it was at the time that the offenses were committed.  (See former §§ 12021, subd. (a)(1) [Stats. 2008, ch. 599, § 4, pp. 4281-4287; now § 29800, subd. (a)(1)], 12022.53, subd. (b) [Stats. 2006, ch. 901, § 11.1, pp. 7075-7077]; Health & Saf. Code, § 11378 [Stats. 2001, ch. 841, § 6, p. 6870].)

1

unauthorized sentence and contending that the trial court erred by refusing to allow him to withdraw his plea. We affirm the conviction, including the sentence.

## I. FACTS

On January 31, 2011, two men entered a Rohnert Park apartment occupied by Nicholas Mason, Matthew Mason, and Matthew Vollers. The intruders—one of them pointing a pistol—bound each of the victims' hands and advised them that they were being robbed. Nicholas Mason saw the suspects drive away in a tan Ford Expedition or Explorer. The Masons reported to police that two pounds of processed marijuana worth $4000, two laptop computers, an external hard drive, a camera, headphones, and $1100 in cash were missing from the apartment. Vollers told police that his cell phone and items from his wallet were also taken.

The Masons told police that they suspected that Christopher Leschinger—a person who had been at the apartment several hours before the robbery—was one of the perpetrators. They had hoped that Leschinger would help them sell their marijuana.

The day after the robbery, two of Leschinger's associates—Charles Davenport and appellant Johnathan Phillip Daniel—were arrested at a Santa Rosa motel on narcotics charges. In their motel room, police found Nicholas Mason's laptop computer, some marijuana, and $879 in cash. Three days later, Daniel's grant of probation stemming from a 2007 burglary was summarily revoked. He was also charged in a separate matter with possession of a controlled substance for sale. Apparently, he had several hundred Ecstasy pills in his possession at the time of his arrest.

Nicholas Mason and Matthew Vollers both identified Daniel in photographic lineups as the armed man who pushed his way into the apartment. A March 3, 2011, parole search of Leschinger's residence turned up a camera bag and digital camera. Photographs of the Masons were on the camera, which Leschinger said that he had purchased from Daniel. When questioned about the January 2011 robbery, Leschinger admitted going to the Masons' apartment before the robbery to look at their marijuana. After Leschinger told Daniel and Davenport about the marijuana, the two men borrowed a Ford Explorer and went out for a while. Daniel and Davenport returned later with a

2

duffel bag containing computers, a digital camera, and about two pounds of marijuana. One of them also had a black semi-automatic pistol. It was clear to Leschinger that Daniel and Davenport had just robbed the Masons. Except for the camera he bought from Daniel, Leschinger said that the other two took the stolen property with them.

Leschinger's roommate was also interviewed. He admitted that he loaned his Explorer to Daniel and Davenport at Leschinger's request. Daniel and Davenport showed off the contents of the duffel bag when they returned his vehicle. He confirmed that computers, and more than a pound of marijuana were inside the duffel. One of the men also had a camera and a weapon.

In jail, Leschinger called Davenport and told him that his roommate had told the police " 'everything.' " He advised Davenport to "get out of town" because the police " 'know everything.' " The police overheard this call.

Later that month, a felony complaint charged Daniel with three counts of robbery, each allegedly committed in concert with others. He was alleged to have personally used a firearm in the commission of two of these serious, violent offenses. In a fourth charge, he was alleged to have been an ex-felon in possession of a firearm at the time of the robberies, based on a 2007 burglary. (§ 211, 213, subd. (a)(1)(A), 459; former §§ 667.5, subd. (c)(8) [Initiative Measure (Prop. 83, § 9)], 1192.7, subd. (c)(8) [Stats. 2006, ch. 337, § 37, pp. 2643-2645], 12021, subd. (a)(1), 12022.5, subd. (a) [Stats. 2004, ch. 494, § 4, pp. 4043-4044], 12022.53, subd. (b).) A public defender was appointed to represent him.

In March 2011, a first amended complaint was filed, adding Leschinger as a defendant. With regard to Daniel, it added a firearm use allegation in the commission of the third robbery and an allegation of a 2010 prior conviction for possession for sale. (See former §§ 667.5, 12022.5, subd. (a), 12022.53, subd. (b); see Health & Saf. Code, § 11378.) A second amended complaint was soon filed, adding Davenport as a defendant. In Daniel's case, this latest complaint added an allegation that he was armed with a firearm during the commission of each robbery. A receiving stolen property charge was also added. (Former §§ 496, subd. (a) [Stats. 2009-2010, 3rd Ex. Sess.,

3

ch. 28, § 23], 12022, subd. (a)(1) [Stats. 2004, ch. 494, § 3, pp. 4042-4043].) Daniel pled not guilty to these charges and denied all enhancement allegations.

Before the preliminary hearing, the prosecution offered to settle the case if Daniel pled to two counts of robbery, admitted a weapons enhancement and stipulated to a sentence of 12 years, 8 months. Daniel rejected the offer. The preliminary hearing was conducted over two days in April 2011. Nicholas and Matthew Mason each identified Daniel in court as the armed perpetrator. At the close of the preliminary hearing, Daniel was held to answer for all charges.

By the end of April 2011, an information was filed charging Daniel with three counts of robbery, allegedly committed in concert. These three charges were each enhanced by allegations that Daniel personally used a firearm in the commission of these serious and violent offenses and that he was armed with a firearm. The information also alleged single counts of being an ex-felon in possession of a firearm and receiving stolen property. (§§ 211, 213, subd. (a)(1)(A); former §§ 496, subd. (a), 12021, subd. (a)(1), 12022.5, subd. (a), 12022.53, subd. (b).)

In May 2011, Leschinger gave police a statement further implicating Daniel in the robberies, and linking him to a weapon allegedly used in the commission of the robberies. On June 3, 2011, a first amended information was filed that no longer charged Daniel with receiving stolen property. He entered a plea of not guilty to the charges. In July 2011, the People offered to settle Daniel's case if he stipulated to a prison term of 16 years, 4 months.

In August 2011, Leschinger pled to two charges in exchange for a seven-year suspended prison sentence and probation. In early October 2011, Davenport was convicted of the offenses charged against him. He was given an eight-year, four-month prison sentence which was suspended. He also received probation.

On October 7, 2011, Daniel had not decided whether to accept the People's offer of a maximum sentence of 16 years, 4 months. The minutes of that day's proceedings indicated that, considering all pending charges, he faced the possibility of 26 years in prison.

4

On October 14, 2011, the case was on for trial. As pretrial motions were being determined and jury selection was in progress, a negotiated plea was still being discussed. The public defender indicated that the case before the court—not including the probation violation and the other pending case—exposed Daniel to a maximum prison term of 25 years, 4 months. Daniel asked for a lower sentence but the prosecution was not willing to offer less than 16 years, 4 months. He discussed that offer with his family, but rejected it later that day. The prosecution withdrew its offer and the case proceeded for jury selection.

Three days later, on October 17, 2011, the public defender was still trying to settle the case for 12 years, 8 months, but the prosecution rejected that offer. The public defender indicated that the maximum prison term Daniel faced, considering all the trailing cases, was 26 years, 4 months. The trial court advised Daniel that it would be in his best interest to accept an offer of 16 years, 4 months if the prosecution would offer this agreement again. Daniel was still hoping for the 12 year, 8 month term, believing that it gave him a better chance to have a life after he served that time, but the trial court made it clear that the prosecution would not offer that again.

During the course of two recesses, Daniel consulted with the public defender about the offer. At the conclusion of this discussion, Daniel entered into a negotiated agreement with the prosecution. He pled no contest to two counts of robbery and admitted the two related firearm use enhancement allegations were true. The negotiated agreement stipulated that he would be sentenced to 16 years, 4 months in state prison. (§ 211; former § 12022.53, subd. (b).)

Daniel signed a written waiver of rights form as part of his plea agreement. In it, he stated that he believed that the plea exposed him to a maximum sentence of 20 years, 8 months. He stipulated to a sentence of 16 years, 4 months. This form indicated that he also expected that his pending possession for sale case would be dismissed, along with the remainder of the charges and enhancements he faced in the robbery case, as part of the plea. He also anticipated receiving a concurrent term for his probation violation. (See former Health & Saf. Code, § 11378.)

Based upon Daniel's no contest plea, the trial court found him guilty of two robberies and the related firearm use enhancements. The prosecution's motion to dismiss the remaining robbery charge, the count of being an ex-felon in possession of a firearm, and all remaining enhancements at the time of sentencing was granted. The matter was set for a December 2011 sentencing.

In November 2011, the matter was put back on calendar at Daniel's request, to enable him to seek to withdraw his plea. After hearing, his *Marsden* motion to remove the public defender was denied. In December 2011, Daniel's public defender filed a written motion to withdraw his plea, complaining that the defendant had not had an opportunity to review Leschinger's statement before entering his plea. Daniel also complained that he was to be sentenced to prison, while his co-defendants were granted probation. The motion hearing was continued several times. The trial court obtained a transcript of the change of plea hearing, and the prosecution filed its opposition to the motion to withdraw.

By May 2012, Daniel had obtained new counsel who filed a new motion to withdraw his plea.[2] The motion argued that Daniel entered into the plea under the mistaken belief that he was exposed to 30 years. He asserted that the "deal" that the defendant accepted was nearly the same as his actual exposure. In a May 2012 declaration supporting the motion, Daniel stated that the public defender had told him that he faced 25 or 30 years in prison if tried and convicted. He declared that if he had not believed that his plea would cut 14 years off his sentence, he would not have entered into the plea agreement. He stated that he accepted the offer of 16 years, as a better option than spending "25 or 30" years in prison. The new motion also argued that section 654 should have applied to limit Daniel's exposure to a single sentence for robbery, because all three robberies were committed in the same transaction. The prosecution also opposed the new motion.

_____

[2] In so doing, Daniel abandoned his earlier motion to withdraw that had been filed by the public defender, with whom he claimed to have a conflict of interest.

In June 2012, the trial court denied Daniel's motion to withdraw his plea. It found that the exposure was stated in open court as 26 years, 4 months, was correct, and that Daniel's declaration made it clear that he considered the negotiated sentence of 16 years, 4 months to be acceptable if his actual exposure was between 25 and 30 years.

The probation report recommended a prison term of 20 years, 8 months, with a consecutive term of 8 months for the probation violation. The trial court noted that this differed from the negotiated disposition, which it followed. In August 2012, Daniel was sentenced to 16 years, 4 months in state prison for the two enhanced robberies and a second degree burglary for which he had been on probation at the time of robberies. The total term was composed of a lower term of three years for the first robbery with a ten-year enhancement for firearm use; a concurrent lower term of three years for the second robbery, with a one-third consecutive enhancement term of three years and four months for firearm use; and a concurrent two-year term for the violation of probation. The remaining counts were dismissed pursuant to the plea agreement, as was the possession for sale charge.

## II. ESTOPPEL

First, Daniel challenges the sentence imposed for a firearm enhancement as an unauthorized sentence—that is, one that the trial court imposed in excess of its jurisdiction. He objects that the trial court imposed a one-third firearm enhancement term as a consecutive term, even though the underlying robbery was imposed as a concurrent term. Citing this as an act in excess of the trial court's jurisdiction, Daniel asks that we strike this three year, four month enhancement. The Attorney General counters that Daniel stipulated to any act in excess of jurisdiction and is thus estopped from raising this claim of error on appeal. We agree.

Ordinarily, a criminal defendant may challenge an unauthorized sentence as one imposed in excess of jurisdiction. However, a defendant may not raise such a challenge if he or she pled guilty in return for a specified sentence—even if the trial court acted in excess of jurisdiction in reaching that sentence—as long as the defendant was properly before that court for sentencing. A defendant who received the benefit of a plea

7

agreement may not challenge that sentence—even if it was in excess of jurisdiction—in an attempt to obtain a greater benefit on appeal. (*People v. Hester* (2000) 22 Cal.4th 290, 295; *In re Griffin* (1967) 67 Cal.2d 343, 347-348.) Daniel entered his plea stipulating to the sentence that he now challenges as in excess of jurisdiction. He is estopped from raising this claim of error on appeal. (See *People v. Hester, supra,* 22 Cal.4th at p. 295; *In re Griffin, supra,* 67 Cal.2d at pp. 347-348.)

### III. MOTION TO WITHDRAW

A. *Calculation of Maximum Exposure*

Daniel also argues that the trial court abused its discretion by denying his motion to withdraw his no contest plea. He argues that confusion about his maximum exposure—the sentence that he could have received if convicted of all charges and sentenced to the greatest sentence for them—should have entitled him to withdraw his plea.

As some of Daniel's argument is based on two miscalculations about his maximum exposure, we clarify these misunderstandings before turning to the merits of the claim of error. First, he assumes that the sentence he received was only four months shorter than what he would have received *if he had been convicted of the two crimes he admitted*. This calculation ignores the additional sentences that his plea agreement avoided or mitigated. Daniel enjoyed a two year reduction as a result of the imposition of a concurrent term for his violation of probation in the burglary case. He was not sentenced on several charges—the third robbery, being an ex-felon in possession of a firearm, and the outstanding possession for sale case—dismissed as part of the agreement. His erroneous calculation fails to take into account these benefits that he received as a result of his negotiated plea in the robbery case.

Second, Daniel suggests that his maximum exposure was overstated because the ban on multiple punishment codified in section 654 precluded more than one sentence for robbery. He is incorrect. An act made punishable in different ways by different statutes must be punished only under the statute that provides the longest potential prison term, but may not be punished under more than one statute. (§ 654, subd. (a).) The ban on

8

multiple punishment applies when there is one act in the ordinary sense, but also when the crimes arise as the result of an indivisible course of conduct. In those circumstances, the general rule is that the defendant may be punished for any of these offense, but not for more than one of them. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208; *People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

However, violent crimes committed against multiple victims can be separately punished without violating the statutory ban on multiple punishment. (*People v. Latimer, supra,* 5 Cal.4th at p. 1212.) The three robberies were charged against Daniel as violent offenses. (See former § 667.5, subd. (c)(8).) His maximum exposure for the three robberies properly included three terms for robbery.

B. *Abuse of Discretion*

Daniel contends that the trial court erred by denying his motion to withdraw his plea. For good cause, a criminal defendant who was represented by counsel at the time of the plea may—at any time before judgment—seek trial court permission to withdraw a guilty plea. (§ 1018; *People v. Gontiz* (1997) 58 Cal.App.4th 1309, 1314, fn. 3, disapproved on another ground in *People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 200, fn. 8.) The motion is addressed to the discretion of the trial court. (*People v. Weaver* (2004) 118 Cal.App.4th 131, 146.) On appeal, we review its decision for an abuse of discretion. (*People v. Holmes* (2004) 32 Cal.4th 432, 442-443; *People v. Weaver, supra,* 118 Cal.App.4th at p. 146.) We will uphold the trial court's ruling unless there is a clear showing of an abuse of discretion. (*People v. Wharton* (1991) 53 Cal.3d 522, 585.)

To prevail, Daniel must produce clear and convincing evidence of good cause to withdraw his plea. (*People v. Wharton, supra,* 53 Cal.3d at p. 585; *People v. Cruz* (1974) 12 Cal.3d 562, 566.) Mistake constitutes good cause to withdraw a guilty plea if the defendant entered the plea under a " 'serious misapprehension' " of the consequences of a negotiated plea. (*People v. Johnson* (1995) 36 Cal.App.4th 1351, 1357; *People v. Cruz, supra,* 12 Cal.3d at p. 566.) Daniel claims that his public defender misadvised him of his

9

maximum exposure, telling him that he faced 30 years in prison.[3]  In open court, she advised him that he faced a possible term of 26 years, 4 months in prison.

Daniel's own declaration stated that he accepted a 16 year, 4 month term because he thought that was better than 25 or 30 years.  The trial court cited this evidence when it found that Daniel did not demonstrate good cause to withdraw his plea.  This evidence also satisfies us that the trial court did not abuse its discretion in denying the motion to withdraw.  Even if we assume arguendo that Daniel was misadvised as he asserts that he was, his plea agreement accepted a sentence that avoided the range of prison time that was unacceptable to him.

The judgment—including the sentence—is affirmed.


_____
REARDON, J.


We concur:


_____
RUVOLO, P. J.


_____
RIVERA, J.


_____

[3] No declaration from the public defender detailing what she told Daniel privately was obtained.