[No. S027839. Oct. 4, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
DEREK LATIMER, Defendant and Appellant.

1204

## COUNSEL

Janyce Keiko Imata Blair, under appointment by the Supreme Court, for Defendant and Appellant.

Jack Funk, Deputy Public Defender (Contra Costa), as Amicus Curiae on behalf of Defendant and Appellant.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard B. Iglehart and George Williamson, Chief Assistant Attorneys General, Gary W. Schons and Harley D. Mayfield, Assistant Attorneys General, Garrett Beaumont, Maxine Cutler, Louis R. Hanoian and Janelle B. Davis, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

ARABIAN, J.—A person kidnaps his victim, drives her into a desert, then rapes her and leaves her behind. May he be punished for the kidnapping as well as the rape under Penal Code section 654, which prohibits multiple punishment for "[a]n act or omission" that is punishable by different provisions of the code? A divided Court of Appeal held that such separate punishment is not permitted because the sole objective of the kidnapping was to facilitate the rape.

This result was based on a decision of this court over 30 years ago that established the direction multiple-punishment analysis has taken in California ever since. (*Neal* v. *State of California* (1960) 55 Cal.2d 11 [9 Cal.Rptr. 607, 357 P.2d 839].) The Attorney General asks us to overrule the test stated in *Neal* and subsequent cases, and to adopt a new test that, it is argued, makes punishment commensurate with culpability, and is true to the language and purpose of Penal Code section 654.

While sympathetic with some of the Attorney General's arguments, we conclude that we may not now overrule *Neal, supra,* 55 Cal.2d 11, and its progeny. For three decades, the Legislature has enacted new sentencing statutes in light of those cases. Although the Legislature has not expressly ratified the *Neal* rule, it has impliedly accepted it. In some respects, the

sentencing structure we have today would be different but for the *Neal* line of cases. To overrule them now would result in a sentencing scheme intended by no one. Principles of stare decisis compel us to adhere to the *Neal* test. Any changes must be made by the Legislature, not this court.

We therefore affirm the judgment of the Court of Appeal.

## I. FACTS

As part of a plea bargain, defendant pleaded nolo contendere to two counts of forcible rape (Pen. Code, § 261, former subd. (2)) and one count of kidnapping (Pen. Code, § 207, subd. (a)); as to one of the rapes, he admitted inflicting great bodily injury. (Pen. Code, § 12022.8.) He had been charged with three counts of rape, two of kidnapping and one of forcible oral copulation. It was agreed that defendant would not receive a prison sentence greater than 20 years, 8 months, and that the remaining counts would be dismissed. Because the plea was entered before the preliminary hearing, the parties stipulated that the report of the sheriff's department constituted a factual basis for the plea. The court sentenced defendant to prison for six years for each of the two rapes, for five years for the infliction of great bodily injury, and for a consecutive term of one year, eight months (one-third of the midterm) for the kidnapping, for a total of eighteen years, eight months.

The sheriff's department and probation reports establish that on Christmas Eve 1989, defendant and the victim, who had met defendant once before, went on some errands in a car borrowed from a friend. At one point, instead of stopping as he was supposed to, defendant drove past the end of the paved road and into an undeveloped area of nearby desert.

Defendant then assaulted the victim. He hit and choked her to force her to undress and submit to him. He then raped her and forced her to orally copulate him. Afterwards, both defendant and the victim got dressed, and defendant drove away. Rather than return to town, however, defendant drove about 50 to 75 yards farther into the desert. There, he raped her a second time. They got dressed again, and again defendant drove farther into the desert. After driving another 30 to 75 yards, defendant stopped the car for a third time. This time the victim, fearing that defendant would kill her, jumped out of the car and ran into the desert. Defendant drove away.

The victim suffered a broken jaw, and had bruises and scratches on her eye, neck, back, hip and arm.

The Court of Appeal, by a two-to-one vote, held that Penal Code section 654 prohibited punishment for the kidnapping in addition to the rapes.

Preliminarily, it held that defendant could raise the issue on appeal despite the plea bargain.[1] It found that the kidnapping was carried out solely to further defendant's "intent and objective" to rape, and that therefore separate punishment for that crime was prohibited. In dissent, Justice Dabney argued that the plea bargain precluded raising the contention on appeal and that, on the merits, separate punishment was proper.

We granted review limited to the merits of the Penal Code section 654 issue.

## II. Discussion

### A. *The Neal Test*

Penal Code section 654 (section 654), which has remained substantially unchanged since its enactment in 1872,[2] provides: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other." This statute was interpreted in *Neal* v. *State of California, supra,* 55 Cal.2d 11 *(Neal),* a habeas corpus case.

In *Neal, supra,* 55 Cal.2d. at page 15, the petitioner "threw gasoline into the bedroom of [the victims] and ignited it. The [victims] were severely burned. Petitioner was tried and convicted on two counts of attempted murder and one count of arson . . . ." The issue was whether section 654 prohibited separate sentencing for the crimes. We held that consecutive sentences for the two attempted murders were proper because they were crimes of violence against separate victims *(id.* at pp. 20-21), but reached a different conclusion regarding the arson.

After finding that conviction for all the crimes rested upon the "act of throwing gasoline into the bedroom of [the victims] and igniting it," we held

---

[1]The court also noted that its "conclusion in this regard is limited to cases concerning plea bargains made prior to January 1, 1991." California Rules of Court, rule 412(b), effective January 1, 1991, now provides: "By agreeing to a specified prison term personally and by counsel, a defendant who is sentenced to that term or a shorter one abandons any claim that a component of the sentence violates section 654's prohibition of double punishment, unless that claim is asserted at the time the agreement is recited on the record."

[2]Section 654 was amended twice as part of the transition to the Determinate Sentencing Act: the first amendment modified, and the second deleted entirely, the original second sentence of the statute which contained cross-references to other Penal Code sections. The first amendment never took effect, as it was subsumed by the second. (Stats. 1976, ch. 1139, § 264, p. 5137; Stats. 1977, ch. 165, § 11, p. 644.)

that section 654 prohibits "[p]unishment for two offenses arising from the same act . . . ." (*Neal, supra,* 55 Cal.2d at p. 18.) "Insofar as only a single act is charged as the basis for the conviction . . . , the defendant can be punished only once." (*Id.* at p. 19.) We cited as an example *People* v. *Brown* (1958) 49 Cal.2d 577, 590-594 [320 P.2d 5], which held that when a single act of abortion caused death, punishment for either the former crime of abortion or murder was proper, but not for both. We then noted, "Few if any crimes, however, are the result of a single physical act. 'Section 654 has been applied not only where there was but one "act" in the ordinary sense . . . but also where a course of conduct violated more than one statute and the problem was whether it comprised a divisible transaction which could be punished under more than one statute within the meaning of section 654.' (*People* v. *Brown, supra,* 591.)" (*Neal, supra,* 55 Cal.2d at p. 19.)

The *Neal* opinion then stated the test that has been followed ever since: "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the *intent and objective* of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Neal, supra,* 55 Cal.2d at p. 19, italics added.)

This statement, and, specifically, reliance on the "intent and objective of the actor," was a substantial departure from our earlier decision of *In re Chapman* (1954) 43 Cal.2d 385 [273 P.2d 817] (*Chapman*). In that case, the petitioner had been convicted of robbery and felony assault. We upheld separate punishment for both crimes, finding that the force used for the robbery was separate from that of the assault. "If the force relied upon to establish the robbery is the same which is required to prove the assault, then petitioner is being punished twice for the same act contrary to section 654 of the Penal Code, but if it is not the same then the two convictions and sentences can stand." (*Id.* at pp. 388-389.) We noted that "[m]ultiple convictions have been affirmed in cases in which separate and divisible acts have been proved as the basis of each conviction even though those acts were closely connected in time and were part of the same criminal venture." (*Id.* at p. 389.)

We then stated the test: "It is only when the two offenses are committed by the same act or when that act is essential to both that they may not both be punished." (*Chapman, supra,* 43 Cal.2d at p. 390.)

The test applied in *Chapman* has never been expressly disapproved,[3] but it has been implicitly abandoned in favor of the *Neal* "intent and objective" test.[4] The latter has been cited many times both by this court and Courts of Appeal. (E.g., *People* v. *Harrison* (1989) 48 Cal.3d 321, 335 [256 Cal.Rptr. 401, 768 P.2d 1078] ["[w]e have traditionally observed" the *Neal* test]; *People* v. *Perez* (1979) 23 Cal.3d 545, 550-554 [153 Cal.Rptr. 40, 591 P.2d 63] [different sex offenses were committed with separate intents and objectives, so could be punished separately]; *People* v. *Beamon, supra,* 8 Cal.3d 625, 636-640 [multiple punishment for kidnapping and robbery is impermissible where only one intent and objective]; *People* v. *Bauer* (1969) 1 Cal.3d 368, 375-378 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398] [multiple punishment for robbery and auto theft during one indivisible transaction is impermissible]; *People* v. *McFarland, supra,* 58 Cal.2d at pp. 760-763 [multiple punishment for burglary and grand theft is impermissible where the only intent was to steal].)

Creation of the *Neal* test did not go unchallenged. Justice Schauer dissented in *Neal* itself, although that dissent focussed primarily on whether section 654 may be raised on habeas corpus. (*Neal, supra,* 55 Cal.2d 11, 21-26 (dis. opn. of Schauer, J.).)

In *Seiterle* v. *Superior Court, supra,* 57 Cal.2d 397, Justice Schauer argued that the *Neal* test, "if taken at its face value, appears to mean that a smart criminal—and some of them are smart and learn fast—could always include in his 'intent and objective' the commission of every crime within his imagination which conceivably might conduce to the attainment and enjoyment of his ultimate objective. For example, if his ultimate objective was to steal and enjoy (in freedom for most of his natural life) the use of a proposed victim's wealth he could plan his 'intent and objective' to include extortion, forgery, kidnaping, robbery, theft of an automobile, and murder of the

---

[3]In *People* v. *Collins* (1963) 220 Cal.App.2d 563, 579 [33 Cal.Rptr. 638], the court noted, "Without overruling *Chapman,* the court in *Neal* v. *State of California, supra,* 55 Cal.2d 11, 19, has virtually done so . . . ." (See also *In re Hayes* (1969) 70 Cal.2d 604, 608, fn. 6 [75 Cal.Rptr. 790, 451 P.2d 430].)

[4]Because the *Neal* opinion cited *People* v. *Brown, supra,* 49 Cal.2d 577, the *Neal* test is sometimes referred to as the "*Brown-Neal*" test." (E.g., *People* v. *Beamon* (1973) 8 Cal.3d 625, 638 [105 Cal.Rptr. 681, 504 P.2d 905].) This is a misnomer. *Brown* contains no language suggesting the intent and objective standard of *Neal.* Justice Schauer, the author of *Brown* and *Chapman, supra,* 43 Cal.2d 385, disagreed sharply with the *Neal* test. (*Neal, supra,* 55 Cal.2d 11, 21-26 (dis. opn. of Schauer, J.); *Seiterle* v. *Superior Court* (1962) 57 Cal.2d 397, 403-406 [20 Cal.Rptr. 1, 369 P.2d 697] (conc. & dis. opn. of Schauer, J.); *People* v. *McFarland* (1962) 58 Cal.2d 748, 763-784 [26 Cal.Rptr. 473, 376 P.2d 449] (conc. & dis. opn. of Schauer, J.).) With more justification, Justice Schauer referred to the test superseded by *Neal* as the "*Chapman-Brown* rule." (*Seiterle* v. *Superior Court, supra,* 57 Cal.2d 397, 404 (conc. & dis. opn. of Schauer, J.).)

victim. . . . According to the *Neal* quotation, 'If all of the offenses were incident to *one objective*, the defendant may be punished for any one of such offenses but not for more than one.' (Italics added [by Justice Schauer].)" (*Id.* at p. 403 (conc. & dis. opn. of Schauer, J.).) He believed that in his hypothetical case, each of the crimes should be punishable separately "because each of them was a separate crime done by a separate act, notwithstanding all 'were incident to one objective.' " (*Id.* at p. 404.) He urged that the "*Chapman-Brown* rule is not only better law; it is better penology." (*Ibid.*)

Justice Schauer's views were expressed most fully in his concurring and dissenting opinion in *People* v. *McFarland, supra,* 58 Cal.2d 748, 763-784. There, he argued that a "careful reading of the majority opinion in *Neal* discloses that the . . . language purporting to adopt the so-called 'intent and objective test' was not necessary to the decision in that case. As the majority there viewed the record, the defendant had committed but a single *act* . . . ." (*Id.* at p. 765, italics in original.) So viewed, the case "presents no problem in applying Penal Code section 654, for under the terms of that statute a single act may be punished only once. . . . [I]n that aspect the case was controlled by ample precedent. There was therefore no need to go on to discuss what rule might be invoked in an entirely different class of cases, i.e., those involving *not a single* act—the only situation embraced by the language of the code section—but a 'course of criminal conduct' encompassing *multiple* acts; such acts being connected *not* in a single crime but only in the multifarious plan of the criminal for the commission of divers crimes requiring separate acts [citations]." (*Ibid.,* italics in original.)

Justice Schauer further argued, "The inevitable effect of this gratuitous ruling will be to create a bargain era for criminals: any number of crimes can be committed for the price of one, provided only that all be included in 'the intent and objective of the actor.' " (*People* v. *McFarland, supra,* 58 Cal.2d 748, 767 (conc. & dis. opn. of Schauer, J.).) He noted the large number of appellate decisions applying the *Neal* test in the mere two years since the decision, and concluded that "the *Neal* dictum has seemingly been interpreted as license to indulge at the appellate level in unbridled speculation as to the scope and content of the criminal's 'objective,' " both in finding a section 654 violation and, especially, in avoiding the necessity of doing so. (*Id.* at p. 769; see also *id.* at pp. 769-771.) "Such legal legerdemain results neither in the fair and impartial administration of criminal justice nor in public respect for the judicial process." (*Id.* at p. 771.) Because of this, Justice Schauer urged us not to "commit ourselves to the vagaries of application and the arbitrary outcome of the so-called 'intent and objective test,' . . ." (*Ibid.*)

These views were echoed in Justice Dabney's dissent in this case: "The *Neal* court stated that punishment is to be commensurate with culpability [see *Neal, supra,* 55 Cal.2d at page 20, where the court discussed the propriety of separate punishment for the two attempted murder convictions]. However, the test created in *Neal* fails to achieve this objective. Under *Neal,* punishment becomes inequitable when a defendant is convicted of two or more serious nonsexual felonies. If we are in fact to punish individuals commensurate to their culpability for the crimes they have committed, *Neal* should be overruled and a new yardstick created to measure punishment equitably for serious felonies committed against a victim. Under the facts of the present case, *Neal* could direct a punishment which minimizes the extent of defendant's culpability for a night of terrorization of the victim. The time has come to reevaluate *Neal.*"

These criticisms have some merit. By its language, section 654 applies only to "[a]n act or omission . . . ." Nothing in this language suggests the "intent or objective" test. As we have noted before, that test is a "judicial gloss" that was "engrafted onto section 654." (*People v. Siko* (1988) 45 Cal.3d 820, 822 [248 Cal.Rptr. 110, 755 P.2d 294].) Whether it should have been is debatable.

In some situations, the gloss defeats its own purpose. We have often said that the purpose of section 654 "is to insure that a defendant's punishment will be commensurate with his culpability." (*People v. Perez, supra,* 23 Cal.3d at p. 551.) The *Neal* test does not, however, so ensure. A person who commits separate, factually distinct, crimes, even with only one ultimate intent and objective, is more culpable than the person who commits only one crime in pursuit of the same intent and objective. A grand criminal enterprise is more deserving of censure than a less ambitious one, even if there is only one ultimate objective. Specifically, as the Attorney General notes, defendant "having been lawfully convicted of kidnapping and rape(s), is clearly more culpable than a defendant who rapes without kidnapping." A rapist should not be insulated from punishment for separate crimes such as kidnapping even if part of the same criminal venture.

A victim, as in this case, who is forcibly transported into the desert, then raped, would be astonished to learn that the rape and the kidnapping were considered to be the same "act or omission" (§ 654), and would find little consolation in the explanation that the defendant had only a single "intent and objective." The kidnapping was a completely separate crime; it should be separately punishable.

Decisions since *Neal* have limited the rule's application in various ways. Some have narrowly interpreted the length of time the defendant had a

specific objective, and thereby found similar but *consecutive* objectives permitting multiple punishment. (E.g., *People* v. *Harrison, supra,* 48 Cal.3d at pp. 334-338 [multiple sex crimes each have the separate objective of achieving additional sexual gratification]; *People* v. *Perez, supra,* 23 Cal.3d at pp. 551-554 [similar]; *People* v. *Trotter* (1992) 7 Cal.App.4th 363, 368 [8 Cal.Rptr.2d 648] ["each shot [fired at the same victim] evinced a separate intent to do violence"].)

Other cases have found separate, although sometimes simultaneous, objectives under the facts. (E.g., *People* v. *Coleman* (1989) 48 Cal.3d 112, 162 [255 Cal.Rptr. 813, 768 P.2d 32] [assault of robbery victim had separate intent and objective than the robbery]; *People* v. *Nguyen* (1988) 204 Cal.App.3d 181, 189-193, 196 [251 Cal.Rptr. 40] [harming of unresisting robbery victim a separate objective from the robbery itself]; *People* v. *Booth* (1988) 201 Cal.App.3d 1499, 1502 [248 Cal.Rptr. 64] ["dual objectives of rape and theft when entering the victims' residences" supported separate punishment for burglaries and rapes]; *People* v. *Porter* (1987) 194 Cal.App.3d 34, 37-39 [239 Cal.Rptr. 269] [robbery and kidnapping the same victim for a later, additional, robbery had separate objectives].) Additionally, even *Neal* itself made clear that crimes of violence against multiple victims were separately punishable. (*Neal, supra,* 55 Cal.2d at pp. 20-21.)

These examples, which are not exhaustive, have helped mitigate the concerns regarding the *Neal* test in specific situations, but have not eliminated them entirely.

B. *Stare Decisis*

■ For these reasons, if this were a question of first impression, this court might today adopt a rule that is truer to the language of section 654 and its purpose, such as that stated in *Chapman, supra,* 43 Cal.2d at page 390, rather than the rule of *Neal, supra,* 55 Cal.2d 11. But this is not a question of first impression. The issue before us is not whether we should adopt the *Neal* rule, but whether we should overrule it. (See *Patterson* v. *McLean Credit Union* (1989) 491 U.S. 164, 172 [105 L.Ed.2d 132, 147-148, 109 S.Ct. 2363].)

■ "It is, of course, a fundamental jurisprudential policy that prior applicable precedent usually must be followed even though the case, if considered anew, might be decided differently by the current justices. This policy, known as the doctrine of stare decisis, 'is based on the assumption that certainty, predictability and stability in the law are the major objectives of the legal system; i.e., that parties should be able to regulate their conduct

and enter into relationships with reasonable assurance of the governing rules of law.' [Citation.] [¶] It is likewise well established, however, that the foregoing policy is a flexible one which permits this court to reconsider, and ultimately to depart from, our own prior precedent in an appropriate case. [Citation.] As we stated in *Cianci* v. *Superior Court* (1985) 40 Cal.3d 903, 924 [221 Cal.Rptr. 575, 710 P.2d 375], '[a]lthough the doctrine [of stare decisis] does indeed serve important values, it nevertheless should not shield court-created error from correction.' " (*Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 296 [250 Cal.Rptr. 116, 758 P.2d 58].)

■ The issue here is one of statutory interpretation. "[T]he burden borne by the party advocating the abandonment of an established precedent is greater where the Court is asked to overrule a point of statutory construction. Considerations of *stare decisis* have special force in the area of statutory interpretation, for here, unlike in the context of constitutional interpretation, the legislative power is implicated, and Congress remains free to alter what we have done." (*Patterson* v. *McLean Credit Union, supra,* 491 U.S. at pp. 172-173 [105 L.Ed.2d at p. 148]; see also *Board of Supervisors* v. *Local Agency Formation Com.* (1992) 3 Cal.4th 903, 921 [13 Cal.Rptr.2d 245, 838 P.2d 1198].)

This is not to say that decisions of statutory interpretation may never be overruled. In *People* v. *King* (1993) 5 Cal.4th 59, 78-79 [19 Cal.Rptr.2d 233, 851 P.2d 27], for example, we overruled a different case interpreting a sentencing statute. (*In re Culbreth* (1976) 17 Cal.3d 330 [130 Cal.Rptr. 719, 551 P.2d 23].) We have recognized that legislative inaction alone does not necessarily imply legislative approval. "The Legislature's failure to act may indicate many things other than approval of a judicial construction of a statute: the sheer pressure of other and more important business, political considerations, or a tendency to trust to the courts to correct their own errors . . . ." (*County of Los Angeles* v. *Workers' Comp. Appeals Bd.* (1981) 30 Cal.3d 391, 404 [179 Cal.Rptr. 214, 637 P.2d 681], internal quotation marks omitted, quoted in *People* v. *King, supra,* 5 Cal.4th 59, 75; see also *People* v. *Escobar* (1992) 3 Cal.4th 740, 750-751 [12 Cal.Rptr.2d 586 [837 P.2d 1100].)

In piloting a path between the conflicting considerations involved here, questions of reliance are often crucial. Parties, society, and legislative bodies may act in reliance on a particular statutory interpretation; overruling that interpretation might have undesirable consequences not present at the time of the original decision. "*Stare decisis* has added force when the legislature, in the public sphere, and citizens, in the private realm, have acted in reliance on a previous decision, for in this instance overruling the decision would

dislodge settled rights and expectations or require an extensive legislative response." (*Hilton* v. *South Carolina Public Railways Com'n* (1991) __ U.S. __, __ [116 L.Ed.2d 569, 112 S.Ct. 560, 564].) "Moreover, the demands of the doctrine are 'at their acme . . . where reliance interests are involved . . . .'" (*Quill Corp.* v. *North Dakota* (1992) 504 U.S. __, __ [119 L.Ed.2d 91, 112, 112 S.Ct. 1904, 1923] (conc. opn. of Scalia, J.), quoting *Payne* v. *Tennessee* (1991) 501 U.S. __ , __ [115 L.Ed.2d 720, 737, 111 S.Ct. 2597, 2610].)

Reliance interests of the parties and society can sometimes be minimized or even negated entirely by making the new rule prospective only. (E.g., *People* v. *King, supra,* 5 Cal.4th at pp. 79-80 [decision overruling *In re Culbreth, supra,* 17 Cal.3d 330, may not be applied to defendant]; *Moradi-Shalal* v. *Fireman's Fund Ins. Companies, supra,* 46 Cal.3d at p. 305.) Legislative reliance, however, is often another matter.

In *Hilton* v. *South Carolina Public Railways Com'n, supra,* __ U.S. at page __ [116 L.Ed.2d at page 570, 112 S.Ct. at page 564], the high court refused to overrule a decision when to do so "would require [certain] States to reexamine . . . statutes" that were passed in reliance on the decision. Similarly, in *Quill Corp.* v. *North Dakota, supra,* 504 U.S. at page __ [119 L.Ed.2d at page 110, 112 S.Ct. at page 1916], the court refused to overrule a decision that "has engendered substantial reliance and has become part of the basic framework of a sizeable industry." (See also *California* v. *FERC* (1990) 495 U.S. 490, 499 [109 L.Ed.2d 474, 486, 110 S.Ct. 2024] [referring to "the deference this Court must accord to longstanding and well-entrenched decisions, especially those interpreting statutes that underlie complex regulatory regimes"].)

■ Here, the Legislature has not exactly *relied* on the *Neal* rule, since it had the power to overrule it. It has also never expressly endorsed it. Rather, it has essentially *accepted* it, perhaps out of a belief that courts are best suited to analyze double-punishment questions. But the result for present purposes is the same as if there had been legislative reliance. The Legislature has enacted substantial legislation reflecting its acceptance of the *Neal* rule. The rule has thus become, not part of the basic framework of a sizeable industry, as in *Quill Corp.* v. *North Dakota, supra,* 504 U.S. at page __ [119 L.Ed.2d at page 110, 112 S.Ct. at page 1916], but part of a complex and comprehensive sentencing scheme.

Section 654, and its *Neal* gloss, apply to a host of factual situations involving different crimes and different statutes. Since *Neal* was decided in 1960, the Legislature has dramatically altered the sentencing landscape.

Indeed, the entire sentencing scheme was transformed in 1977 with the abandonment of the Indeterminate Sentence Law in favor of the Determinate Sentencing Act. (See generally *In re Flodihn* (1979) 25 Cal.3d 561 [159 Cal.Rptr. 327, 601 P.2d 559].) Since 1977, there have been numerous changes in sentencing laws, including increases in the length of terms for many crimes. At this time, it is impossible to determine whether, or how, statutory law might have developed differently had this court's interpretation of section 654 been different. For example, the limitations the *Neal* rule placed on consecutive sentencing may have affected legislative decisions regarding the length of sentences for individual crimes or the development of sentence enhancements.

These abstract concerns become concrete upon examination of the specific crimes involved in this case. In 1983, the Legislature added Penal Code section 667.8. As it currently reads, subdivision (a) of that section provides in pertinent part that "any person convicted of a felony violation of [specified sexual offenses, including rape,] who, for the purpose of committing that sexual offense, kidnapped the victim in violation of Section 207, shall be punished by an additional term of three years." This enhancement was neither pled nor proven here, and thus cannot be applied. (*People* v. *Hernandez* (1988) 46 Cal.3d 194 [249 Cal.Rptr. 850, 757 P.2d 1013].) Its existence, however, substantially affects our ability to effectively overrule the *Neal* rule in this specific application.

In *People* v. *Hernandez, supra,* 46 Cal.3d at page 203, we examined the history of Penal Code section 667.8, and concluded that the additional term it provides for "was originally designed to eliminate the partial sentence reduction that might be gained by application of . . . the prohibition against multiple punishment contained in section 654 (if the kidnapping and sex offense were part of one indivisible course of conduct)." In other words, the Legislature was apparently aware that under the prevailing interpretation of section 654, consecutive sentences for a sexual offense and kidnapping would be impermissible if the sole purpose of the kidnapping was to facilitate the sexual offense. It accepted that interpretation (although never affirmatively endorsed it), and enacted the three-year enhancement of section 667.8 to remedy the problem.

If we now overrule *Neal*, and adopt a new rule that would allow consecutive punishment in this case, we would be left with both the ability to consecutively punish the kidnapping *and* the three-year enhancement of Penal Code section 667.8. Difficult questions would arise. Would both consecutive punishment and the enhancement be allowed? If so, the total sentence might well be greater than the Legislature ever contemplated, since

section 667.8 might not have been enacted if consecutive sentencing had always been allowed. If not, how do the enhancement and the consecutive sentence interact? What would the Legislature have intended if it had known of the new rule? On a more general front, what other statutes and legislative decisions may have been influenced by the *Neal* rule, and in what ways? These are questions the Legislature, not this court, is best equipped to answer.

In *People* v. *King, supra,* 5 Cal.4th 59, concerns other than stare decisis predominated. Here, however, the situation is different. *In re Culbreth, supra,* 17 Cal.3d 330, was a specific, narrow ruling that could be overruled without affecting a complete sentencing scheme. The *Neal* rule, by contrast, is far more pervasive; it has influenced so much subsequent legislation that stare decisis mandates adherence to it. It can effectively be overruled only in a comprehensive fashion, which is beyond the ability of this court. The remedy for any inadequacies in the current law must be left to the Legislature. We therefore decline the Attorney General's invitation to overrule *Neal.*

Our refusal to overrule *Neal,* however, must not be construed as an endorsement of its wisdom. A different rule, such as that of *In re Chapman, supra,* 43 Cal.2d at page 390, quoted above, has much to commend it. But at this late date, any changes must be made by the Legislature, which obviously has the authority to modify the rule any time it chooses.

We also stress that nothing we say in this opinion is intended to cast doubt on any of the later judicial limitations of the *Neal* rule. For example, we do not intend to question the validity of decisions finding consecutive, and therefore separate, intents, and those finding different, if simultaneous, intents. (See pt. II. A., *ante,* last three paragraphs.) Multiple punishment in those cases remains appropriate.

## C. *Resolution of This Case*

It could be argued that defendant had two intents: (1) to drive the victim against her will to an isolated area, and (2) to rape her. Cases applying the *Neal* rule, however, make clear that multiple punishment for both the rapes and the kidnapping is prohibited under the circumstances of this case. Although the kidnapping and the rapes were separate acts, the evidence does not suggest any intent or objective behind the kidnapping other than to facilitate the rapes. "Since the kidnapping was for the purpose of committing the sexual offenses and [defendant] has been punished for each of the sexual offenses," section 654 bars execution of sentence on the kidnapping count.

(*People* v. *Flores* (1987) 193 Cal.App.3d 915, 921-922 [238 Cal.Rptr. 656] [noting, however, the possible imposition of the three-year enhancement of Pen. Code, § 667.8, subd. (a)]; see also cases cited therein and *People* v. *Hernandez, supra,* 46 Cal.3d at p. 203.)

### III. CONCLUSION

The judgment of the Court of Appeal is affirmed.

Lucas, C. J., Panelli, J., Kennard, J., Baxter, J., and George, J., concurred.

**MOSK, J.**—I concur in the judgment.

However, I do not join in the criticism of *Neal* v. *State of California* (1960) 55 Cal.2d 11 [9 Cal.Rptr. 607, 357 P.2d 839]. Justice Traynor's opinion for the majority in that case has withstood numerous assaults for more than three decades and does not merit an additional critique at this late date. Lengthy quotations by the majority from dissenting opinions in *Neal* and in the Court of Appeal add nothing to the correct solution of this case.