Filed 8/18/14  P. v. Godoy CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G048646 |
| v. | (Super. Ct. No. 12WF1631) |
| CARLOS ENRIQUE GODOY, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Richard F. Toohey, Judge.  Affirmed as modified.

Patricia J. Ulibarri, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Randall Einhorn and Quisteen S. Shum, Deputy Attorneys General, for Plaintiff and Respondent.

Carlos Enrique Godoy was convicted of kidnapping with the intent to commit rape (Pen. Code, § 209, subd. (b)(1), count 1),[1] kidnapping as a lesser offense of kidnapping for robbery (§ 209, subd. (b)(1), count 2), assault with the intent to commit rape (§ 220, subd. (a), count 3), and robbery (§ 211, count 4). The trial court later granted the prosecution's motion to dismiss count 2 and sentenced Godoy to life in prison.

On appeal, Godoy argues the trial court violated section 654 by imposing separate punishment on count 3 (assault with the intent to commit rape) and on count 1 (kidnapping with the intent to commit rape). He asserts the evidence shows counts 1 and count 3 were committed for a single intent and objective, i.e., committing rape. We agree and modify the judgment to stay the concurrent four year term on count 3. We affirm the judgment in all other respects.

FACTS

At the time of the incident, V.R. lived in Garden Grove, close to her employment at the Venus Sports Lounge (Venus) on Beach Boulevard (Beach). One evening in June 2012, V.R.'s fiancée drove her home from work because she had been drinking. She left her car at Venus.

After arguing with her fiancée, V.R. decided at 1 a.m. to walk to Venus and retrieve her car. As V.R. approached a gas station on Beach, she saw Bernard Peters. V.R. knew Peters through their mutual friend, Tiffany Brewer. Peters offered to give V.R. a ride to her car, however, V.R. declined because she did not know Peters very well, and she did not trust him enough to get into a vehicle with him. After declining Peters's offer for a ride, V.R. continued running west down Beach.

On her way, V.R. either called, or received a call from Brewer. V.R. started walking as she spoke with Brewer. When V.R. walked across a river bed on

---

[1]     All further statutory references are to the Penal Code.

Beach, Godoy jumped on her back. V.R. turned and tried to fight off her attacker, but Godoy threw V.R. down onto the sidewalk, causing her cellular phone to drop.

Knowing Brewer was still on the phone, V.R. began yelling Brewer's name as well as statements such as, "'What the fuck,'" "'Get off me,'" "'Help me,'" and "'Save me[.]'" Because V.R. had mentioned meeting Peters during their phone conversation, Brewer hung up the phone and immediately called Peters.

While fighting with her attacker on the ground, V.R. attempted to buy herself some time and calm Godoy by asking him if he wanted to have sex. Godoy then picked V.R. up off of the sidewalk, put her over his shoulder, and carried her to an area behind a bush located in the adjacent Beach Executive Plaza (Plaza) business park. He threw her down to the ground.

While behind the bushes, V.R. continued to struggle and resist Godoy's multiple attempts to pull down her panties. During this struggle, Godoy tried to get V.R. to stop making noise, and at one point put his hand on her neck with a grip to choke her.

Meanwhile, Brewer telephoned Peters and said she thought V.R. was being attacked and needed immediate help. Peters, who was driving northbound on Beach, made a U-turn on Chapman Avenue to drive towards Venus. He also called 911. After pulling his car into the Plaza's driveway, Peters rolled down his window and heard a muffled female voice talking in Spanish. Peters then turned his truck so that it was facing the direction of the sounds and he saw the bottom of V.R.'s skirt and her legs kicking behind the bushes. Peters pointed his vehicle's high beams towards the bushes where he saw V.R.'s legs. He exited his truck with a flashlight. At this point, Godoy stood up and ran along the line of bushes behind the building towards the back of the building. Simultaneously, V.R. ran out from behind the bushes to Peters and was crying inconsolably.

3

After arriving on the scene, and finding V.R. pacing back and forth crying, Deputy Shannon Parker obtained and disseminated a description of the suspect and the direction he fled. Parker saw V.R.'s elbow and lower leg were injured. She also had broken fingernails. V.R. indicated she received these injuries during the attack. At trial, Parker testified he took measurements at the Plaza and determined the distance between the sidewalk where Godoy jumped on V.R.'s back to the bushes where the struggle took place, was approximately 50 feet.

Deputies later spotted an individual who matched V.R.'s description of her attacker. Deputies eventually detained and searched Godoy and found V.R.'s cellphone. Both V.R. and Peters later identified Godoy as the man involved in the attack.

Godoy was charged with the following four offenses: (1) kidnapping with the intent to commit a sex offense; (2) kidnapping with the intent to commit robbery; (3) assault with intent to commit a sex offense; and (4) and robbery.

A jury found Godoy guilty of all the charges. The trial court granted the prosecution's motion to dismiss count 2 (the lesser included crime of kidnapping). The court sentenced Godoy to life imprisonment on count 1, four years on count 3, and three years on count 4. The court ordered the sentences on count 3 and 4 to run concurrent with the life term imposed in count 1. Godoy was ordered to register as a sex offender for life pursuant to section 290, subdivision (a)(1).

## DISCUSSION

Godoy argues that the trial court violated section 654 by imposing separate, concurrent punishments for count 1, kidnapping with intent to commit rape, and count 3, assault with intent to commit rape. Godoy contends his conduct was part of one continuous course of conduct and he had only one intent and objective: to rape V.R. We agree.

In relevant part, section 654, subdivision (a), provides, "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall that act or omission be punished under more than one provision." "The purpose of this legislative protection against punishment for more than one violation arising out of an 'act or omission' is to insure that a defendant's punishment will be commensurate with his culpability." (*People v Perez* (1979) 23 Cal.3d 545, 550-551.)

Section 654 prohibits multiple punishments for an indivisible course of conduct that has a common intent and objective, even though the conduct in question violates more than one statute. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1207-1208 (*Latimer*).) "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Neal v. State* (1960) 55 Cal.2d 11, 19 (*Neal*), overruled in part in *People v. Correa* (2012) 54 Cal.4th 331, 337-338.) The challenge in accurately applying section 654 is that the number of different circumstances wherein criminal conduct involving multiple violations may be deemed to arise out of an "act" or "omission" are endless. (*People v. Butler* (1986) 184 Cal.App.3d 469, 472.)

"A defendant's criminal objective is 'determined from all the circumstances and is primarily a question of fact for the trial court, whose findings will be upheld on appeal if there is any substantial evidence to support it.' [Citation.]" (*People v. Braz* (1997) 57 Cal.App.4th 1, 10.) Ordinarily, a section 654 claim is not waived on appeal if a defendant fails to make an objection in the trial court; the applicability of section 654 is addressed on appeal regardless of whether the point was raised in the trial court. (*People v. Hester* (2000) 22 Cal.4th 290, 295; *Perez, supra,* 23 Cal.3d at p. 545.) Where a trial

court fails to stay the terms that are subject to section 654, the appellate court must stay the sentence on the lesser offense while permitting the execution of the greater offense consistent with the ruling of the trial court. (*People v. Diaz* (1967) 66 Cal.2d. 801, 807.)

Here, the record is silent as to whether the trial court considered section 654. It made no express findings regarding whether or not Godoy harbored a separate criminal intent and objective for the kidnapping with the intent to commit rape and the assault with the intent to commit rape. Imposing concurrent terms is not analogous to implementing section 654. Simply put, a concurrent term is not a stayed term. In fact, imposing concurrent terms is generally seen as an implied finding that the trial court found that defendant bore multiple intents or objectives.

Concurrent terms can be viewed as a rejection of the applicability of section 654. (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1468.) "The defendant's intent and objective are factual questions for the trial court, and we will uphold its ruling on these matters if it is supported by substantial evidence." (*People v. Perry* (2007) 154 Cal.App.4th 1521, 1525.) "A trial court's implied finding that a defendant harbored a separate intent and objective for each offense will be upheld on appeal if it is supported by substantial evidence." (*People v. Blake* (1998) 68 Cal.App.4th 509, 512.) "Thus, '[w]e review the trial court's finding "in a light most favorable to the respondent and presume in support of the order the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]"' [Citation.]" (*People v. Lopez* (2011) 198 Cal.App.4th 698, 717.) Here, for the reasons discussed below, we find there is not substantial evidence to support a finding of separate intents and objectives.

In arguing that section 654 applies, Godoy relies on *Latimer*. In that case, defendant was convicted of two counts of forcible rape (§ 261), one count of kidnapping (§ 207, subd. (a)), and one great bodily injury enhancement (§ 12022.8). He received consecutive sentences on all the counts. (*Latimer, supra,* 5 Cal.4th at p. 1206.) The court

noted that section 654 applies where a course of conduct violates multiples statutes. (*Latimer, supra,* 5 Cal.4th at p. 1208.)  The court further reasoned that where multiple sex crimes have been committed for the alleged sole objective of achieving "sexual gratification," section 654 does not preclude punishing each individual sex crime. (*Latimer, supra,* 5 Cal.4th at pp. 1211-1212.)

In *Latimer,* defendant was running errands with the victim and then drove her out into the desert, he proceeded to hit and choke her to force her to undress and submit to him.  Defendant then raped the victim and forced her to orally copulate him. After the two dressed, defendant then drove another 50 to 75 yards further into the desert where he raped the victim again.  (*Latimer, supra,* 5 Cal.4th at p. 1206.)  Applying the test in *Neal, supra,* 55 Cal.2d 11, the court held that section 654 prohibited punishment for both the kidnapping and the two rapes.  (*Latimer, supra,* 5 Cal.4th at p. 1206.)  While the rapes and the kidnapping were clearly separate acts, the court held the only intent and objective of the kidnapping was for defendant to facilitate the rapes.  In applying section 654, the court found that because defendant had been punished for both of the rapes, and the intent and objective of the kidnapping was to facilitate the rapes, defendant could not be separately punished for the kidnapping.  (*Latimer, supra,* 5 Cal.4th at pp. 1216-1217.)

Similarly here there is no evidence in the record that in assaulting the victim Godoy had any other criminal ambitions besides completing the objective rape. Godoy's kidnapping and assault of the victim were a single hurried and continuous course of conduct with the single goal of rape in mind.  All of the crimes that were committed were incidental to facilitating one intent and objective.

Relying on *Bradley*, *supra,* 15 Cal.App.4th at p. 1158, disapproved on another ground in *People v. Rayford* (1995) 9 Cal.4th 1, 21-22, the Attorney General argues section 654 does not apply to counts 1 and 3.  In *Bradley*, defendant approached

the victim at a pay phone, grabbed her upper arm, and forcibly walked her around the corner of a building into a dimly lit dumpster area. (*Bradley*, *supra*, 15 Cal.App.4th at p. 1155.) Defendant had a companion who aided him in the forced escort of the victim. The dumpster area was 50 to 60 feet from the pay phone and was enclosed by six-and-one-half-foot high block walls. After they were inside of the enclosure, defendant's companion jumped on top of a dumpster while defendant continued to hold on to the victim. Defendant began calling the victim different vulgarities and, with his free hand, pulled her hair back away from her neck, pushed her head back, and started kissing her neck. The victim rebuffed several attempts by defendant to kiss her on the mouth. Defendant then used his free hand to caress the victim underneath her shirt and then underneath her shorts, eventually caressing her within an inch of her vaginal area. During this attack, car lights suddenly shined on the dumpster area, the victim then kicked defendant in the shins, after which both defendant and his companion fled the dumpster enclosure. (*Bradley*, *supra*, 15 Cal.App.4th at p. 1150.)

Defendant was subsequently convicted of kidnapping with intent to commit rape, assault with intent to commit rape, and sexual battery. (*Bradley*, *supra*, 15 Cal.App.4th at p. 1149.) The court in *Bradley* applied section 654 to only the sexual battery conviction. (*Ibid*.)

The *Bradley* court viewed defendant's objective in moving the victim as separate from his later objective in assaulting her, and therefore, defendant could be punished for each of the convictions. (*Id.* at p. 1158) The court reasoned that to combine these two acts, the kidnapping with the intent to rape and the assault with the intent to rape, into one indivisible course of conduct under the broad objective of defendant's "sexual gratification," would reward defendant for his greater criminal ambitions. (*Ibid.*) Citing *People v. Beamon* (1973) 8 Cal.3d 625, 637, the court in *Bradley* stated that where

8

there is a course of criminal conduct that is divisible into separate acts under the meaning of section 654, each act may result in separate punishment. (*Bradley*, *supra*, 15 Cal.App.4th at p. 1157.) The court was able to divide defendant's actions because of the nature of the assault within the dumpster area. Defendant's actions once inside the dumpster enclosure were simply unnecessary to merely facilitate a rape after the kidnapping. His behavior indicated defendant harbored multiple intents and objectives: the kidnapping with intent to rape and, once inside the enclosure, assault with intent to rape. Section 654 therefore did not apply, and defendant could be punished for his divisible acts.

We find the California Supreme Court case of *Latimer* controlling and the *Bradley* case factually distinguishable. Godoy's kidnapping and subsequent assault on V.R. were all part of a single course of behavior which focused on one ultimate objective: raping V.R. Although some of the facts of *Bradley* are similar to the case before us, it is distinguishable because of the specific nature of that defendant's conduct. Here, unlike in *Bradley*, there was only one hurried, continuous course of conduct. Godoy jumped on the victim as if she were giving him a "piggyback ride," threw her to the sidewalk, carried her over his shoulder, and threw her down in some nearby bushes. Once positioned behind the bushes, Godoy immediately attempted to pull down V.R.'s panties in order to facilitate the rape. During this struggle Godoy tried to silence V.R. by choking her to complete his objective. Much like the defendant's conduct in *Latimer*, Godoy's actions indicated he possessed but one single intent and objective. The kidnapping and assault of V.R. were a continuous course of conduct and both were committed to achieve the same intent and objective. Therefore, section 654 applies.

Section 220, subdivision (a) carries a sentence of two, four, or six years. Here, the trial court imposed a sentence of four years. Section 209, subdivision (b)(1), carries with it a sentence of life with the possibility of parole. For that reason, pursuant

9

to section 654, we will modify the judgment to stay execution of Godoy's sentence on the lesser offense, count 3 (assault with the intent to commit rape).

## DISPOSITION

We affirm the convictions but modify the judgment as follows:  The four year term imposed on count 3 is ordered stayed pursuant to section 654. The trial court is directed to prepare an amended abstract of judgment consistent with this opinion and forward to the Department of Corrections and Rehabilitation, Division of Adult Operations.


O'LEARY, P. J.

WE CONCUR:


ARONSON, J.


FYBEL, J.


10