Filed 7/28/15  P. v. Jennings CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B254656 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA401298) |
| v. | |
| KYLE JENNINGS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Jose Sandoval, Judge.  Modified and affirmed with directions.

Michael Allen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Jason Tran, Supervising Deputy Attorney General, and Jonathan M. Krauss, Deputy Attorney General, for Plaintiff and Respondent.

_____

Defendant Kyle Jennings appeals from the judgment entered following a jury trial in which he was convicted of two counts of first degree burglary, one of which the court later reduced to second degree burglary; three counts of second degree burglary of vehicles; and one count of receiving stolen property. Defendant contends his sentence violates Penal Code section 654[1] and the trial court miscalculated his credits. We agree in part with defendant's section 654 contention and stay the sentence on one of the second degree burglary convictions. Given the Attorney General's concession regarding the miscalculation of presentence credits, we further modify the judgment to reflect the correct credits.

## BACKGROUND

### Count 1: burglary of the garage

About 4:30 a.m. on August 8, 2012, Joseph Augusta entered the gated parking structure beneath his apartment building and noticed two men inside the apartment manager's van. Augusta made eye contact with them and told them to leave. Both men ran out of the garage. As Augusta walked toward his own car, defendant emerged from between Augusta's car and the one next to it. Augusta told defendant to leave. Defendant complied, but returned while Augusta was speaking with the 911 dispatcher. Defendant had a towel wrapped around one hand and was extending that arm as if pointing a gun at Augusta. Augusta drew his own gun and aimed at defendant, who dropped to the ground, but subsequently fled.

The lock and security panel for the garage gate had been broken. An unfamiliar pickup truck had been left in the garage, parked directly behind Augusta's car.

### Counts 2, 3, and 4: burglary of vehicles in the garage

Maxim Olevsky (count 2), the manager of the apartment building, testified his van was parked in the garage beneath the apartment building and locked. After the burglary,

---

[1] Undesignated statutory references are to the Penal Code.

2

he discovered the rear window in the van had been broken and several items were missing from inside the van.

Naomi Oullette (count 3) testified her car was parked in the garage beneath the apartment building and locked. After the burglary, the rear window of her car was broken, the glove box was open and had been ransacked, and items from inside her car were missing, including the opener for the garage gate.

Katharine Jacobs (count 4) testified her vehicle was parked in the garage beneath the apartment building and locked. After the burglary, the sunroof on her vehicle was pulled upward and identification documents were missing from her car.

## Count 9: burglary of storage units in garage

Pablo Mesminkin testified he used three storage lockers located in front of his parking place in the garage beneath the apartment building. He always kept them locked. After the burglary, he found the lockers were open and items from the lockers were missing.

## Recovery of property and count 8 (receiving stolen property)

Police searched the pickup truck left in the apartment building garage and found the property taken from Olevsky's, Oullette's, and Jacobs's vehicles and Mesminkin's storage lockers. They found receipts in defendant's name on the front passenger seat. They also recovered a grey bag containing copper pipes that Gary Sitinsky testified went missing from the bed of his truck sometime between the evening of August 7 and morning of August 8, 2012. Sitinsky's truck had been parked in a secure garage beneath a different building.

## Verdicts and sentencing

The jury convicted defendant of two counts of first degree burglary (counts 1 and 9), three counts of second degree burglary of vehicles, and one count of receiving stolen property. The trial court reduced count 9, which pertained to the storage lockers, to second degree burglary. Defendant admitted allegations he had suffered a prior serious felony conviction, alleged pursuant to both section 667, subdivision (a)(1) and the "Three

3

Strikes" law, and served a prior prison term within the scope of section 667.5, subdivision (b). It sentenced defendant to an aggregate second strike term of 20 years 8 months, consisting of 8 years for the first degree burglary of the garage, 5 consecutive subordinate terms of 16 months apiece for each second degree burglary and the receiving stolen property count, plus 5 years for the prior serious felony enhancement and 1 year for the prior prison term enhancement.

## DISCUSSION

### 1. Application of section 654 to defendant's burglary convictions

#### a. Proceedings in the trial court

In her sentencing memorandum and at the sentencing hearing, defense counsel argued section 654 barred sentencing defendant for both the garage burglary and the vehicular and storage unit burglaries because they were all committed during a single course of conduct and with a single intent, i.e., to steal from the cars and storage lockers. Counsel argued, "[T]here's no other purpose for him to go into this garage other than to break into these vehicles and into the storage lockers that were inside the garage."

The trial court concluded section 654 was inapplicable due to "the separate nature of the break-ins." The court found the case analogous to *People v. James* (1977) 19 Cal.3d 99 (*James*)[2] and stated, "He broke into the garage[;] inside the garage were the private property either through vehicles or storage units of separate individuals who had. . . . the fortuitous circumstances that they happened to be parked in the same garage." The trial court therefore imposed unstayed consecutive terms for each burglary conviction.

Defendant contends the trial court erred by failing to stay the terms for all of the vehicular and storage locker burglaries.

---

[2] The court erroneously referred to *James* as "*People v. Torres*," but corrected its misnomer by means of a nunc pro tunc minute order.

**b. Section 654's limitation on sentencing for multiple offenses**

Section 654, subdivision (a) provides that "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." The purpose of section 654 is "to insure that a defendant's punishment will be commensurate with his culpability." (*People v. Perez* (1979) 23 Cal.3d 545, 550–551.)

The statute prohibits punishment for two crimes arising from an indivisible course of conduct. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208.) If all of the crimes were merely incidental to, or were the means of accomplishing or facilitating one objective, a defendant may be punished only once. (*People v. Harrison* (1989) 48 Cal.3d 321, 335.) But if a defendant had separate objectives that "were either (1) consecutive even if similar or (2) different even if simultaneous," multiple punishment is permissible, even if the crimes shared common acts or were parts of an otherwise indivisible course of conduct. (*People v. Britt* (2004) 32 Cal.4th 944, 952; *Harrison*, at p. 335.) In applying section 654, the defendant's objectives must not be "parse[d] . . . too finely." (*Britt*, at p. 953.)

Offenses that were committed with a single intent and objective may be punished separately if they were committed on different occasions. (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1253.) Factors often considered in determining the temporal divisibility of offenses are whether the defendant had an opportunity to reflect upon and renew his or her intent before committing the next offense and whether each offense created a new risk of harm. (*Id.* at p. 1255.)

The defendant's intent and objective are factual questions for the trial court, and we will uphold its ruling on these matters if it is supported by substantial evidence. (*People v. Coleman* (1989) 48 Cal.3d 112, 162.)

Where section 654 applies to several counts, the longest term provided by any of those counts is the one imposed, while the shorter terms are stayed. (§ 654.)

5

**c.     Section 654 requires staying the sentence for one of the second degree burglary convictions**

As far as the record reveals, defendant's only intent in breaking into the garage was to commit theft. "When a defendant is convicted of burglary and the intended felony underlying the burglary, section 654 prohibits punishment for both crimes." (*People v. Islas* (2012) 210 Cal.App.4th 116, 130 [apartment burglary committed with intent to falsely imprison residents].) Thus, for example, where a defendant is convicted of both burglary and theft, where the defendant's intent upon entry was to commit theft, section 654 requires that punishment be stayed on either the burglary or the theft conviction. (See, e.g., *People v. Cline* (1998) 60 Cal.App.4th 1327, 1336.)

Section 654 does not bar multiple punishment, however, where there are "multiple break-ins, each with a separate felonious intent," even though the intent in each instance is identical, e.g., theft. (*People v. Bowman* (1989) 210 Cal.App.3d 443, 448.) In *Bowman*, the defendant burglarized several buildings and numerous vehicles at an auto dealership. (*Id.* at pp. 445–446.) The trial court imposed unstayed sentences for eight burglary convictions. The appellate court rejected the defendant's claim that his sentence violated section 654: "[D]efendant did not commit a single break-in as contended, but rather committed multiple break-ins, each with a separate felonious intent. While the felonious intent in each instance was the same, this does not make the various violations incidental to each other or to one primary criminal objective. Thus, even though the violations were part of an otherwise indivisible course of conduct in that they occurred during one night, it was within the trial court's discretion to impose consecutive sentences." (*Id.* at p. 448.)

Similarly, in *James*, *supra*, 19 Cal.3d 99, the defendant entered three separately leased offices in a small office building and was convicted of three counts of burglary based upon his commission of theft in two offices and robbery in the third office. The Supreme Court rejected James's contention that he could not be sentenced separately for the burglary of each office, explaining, "defendant forcibly broke into three different

6

rented premises occupied by tenants who had no common interest other than the fortuitous circumstance that they happened to lease office suites in the same commercial building.  There is no doubt that if the premises had been located in three separate buildings defendant could have been punished for three separate burglaries; he is not entitled to two exempt burglaries merely because his victims chose the same landlord.  If the rule were otherwise, a thief who broke into and ransacked every store in a shopping center under one roof, or every apartment in an apartment building, or every room or suite in a hotel, could claim immunity for all but one of the burglaries thus perpetrated.  Nothing in the statute or case law on multiple punishment compels such an incongruous result." (*Id.* at p. 119, fn. omitted.)

Here, defendant's separate break-ins into each of the three vehicles and the storage units reflect separate intents to steal from each.  Each such entry was separate, divisible conduct.  Defendant had an opportunity to reflect upon and cease his felonious conduct between each break-in, but he repeatedly chose to break into the next vehicle or locker until Augusta interrupted him.  Defendant's intent to commit theft from each car and locker does not make the crimes either a single, indivisible course of conduct or incidental to one another.  Thus, the trial court did not err by failing to stay the sentences on each second degree burglary conviction.

The burglary of the garage itself, however, appears to have been committed only with the intent to break into and steal from cars and storage units, and it was thus merely the means of accomplishing the other burglaries.  Accordingly, the general rule prohibiting separate punishment of both the burglary and the intended felony underlying the burglary applies to the burglary of the garage and one of the second degree burglaries.  Because the first degree burglary conviction carried a longer term than any of the second degree burglary convictions, we modify the judgment by staying punishment on one of the second degree burglary convictions.

**2. Calculation of presentence credits**

The trial court calculated defendant's presentence credits as 543 days for actual custody and 542 days for conduct credits. Defendant contends, and the Attorney General agrees, that defendant was in custody for 544 days and is entitled to an equal number of days of conduct credits. Accordingly, we modify the judgment to reflect the corrected presentence credits.

## DISPOSITION

The judgment is modified by staying the sentence imposed for count 2, pursuant to Penal Code section 654. It is further modified with respect to presentence credits: defendant is entitled to a total of 1088 days, consisting of 544 days for actual custody and 544 days for conduct credits. As modified, the judgment is affirmed. The trial court is directed to issue an amended abstract of judgment reflecting the stay of sentence for count 2, the new aggregate sentence of 19 years 4 months, and the corrected credit award.

NOT TO BE PUBLISHED.


MOOR, J.*

We concur:


ROTHSCHILD, P. J.


CHANEY, J.

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.