Filed 8/2/16  P. v. Rodriguez CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RUBEN PUENTE RODRIGUEZ,<br><br>    Defendant and Appellant. | H041644<br>(Santa Clara County<br>Super. Ct. No. C-13-70383) |

Defendant Ruben Puente Rodriguez assaulted his father and also threatened to kill him and harm his family.  Based on that conduct, defendant pleaded no contest to three felonies:  elder abuse (Pen. Code, § 368, subd. (b)(1)),[1] assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)), and making criminal threats (§ 422, subd. (a)).  On appeal, defendant argues that his sentence for making criminal threats should have been stayed under section 654 because it was part of a course of conduct that was indivisible from the conduct on which the other convictions was based.  For the reasons stated here, we will affirm the judgment.

## I.    TRIAL COURT PROCEEDINGS

According to the probation report, in November 2013 San Jose Police Department officers were dispatched to the home of defendant's father, Ruben Rodriguez, Sr. (father), based on a report of a family disturbance.  An officer found father "in a great deal of pain"; father was holding his back and could not stand or walk.  Father told the officer

---

[1] Unspecified statutory references are to the Penal Code.

that he had begun arguing with defendant after defendant threatened to harm father's wife, who was ill and in another room. Defendant was no longer at the house when the officers arrived.

Defendant's sister stated that she had woken up at the house to the sound of father and defendant yelling at each other in the front room. She entered the room and saw defendant push father to the ground. Defendant "stomped on [father] several times with his feet." Another of defendant's sisters also witnessed the attack, stating that defendant punched father with closed fists several times, knocked him to the ground, and then kicked him several times. Father's wife did not witness the assault because she was in another room but heard defendant threaten to kill father. Defendant does not contest the statement in the probation report that "defendant also threatened to harm all of the family members ... ."

Defendant was charged with: elder abuse (§ 368, subd. (b)(1)), assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)), and making criminal threats (§ 422, subd. (a)). The complaint also alleged that defendant had suffered a prior serious or violent felony conviction (§ 667, subds. (b)–(i)). In return for an indicated sentence of no more than five years four months in prison, defendant pleaded no contest to all three charged counts and admitted the prior conviction. Defendant filed a sentencing memorandum containing: a *Romero* motion (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497) regarding the prior strike; a motion to reduce the criminal threats conviction to a misdemeanor (§ 17, subd. (b)); and a legal argument that section 654 required the court to stay the sentences on two of the three felony convictions. The court granted the *Romero* motion, denied the section 17, subdivision (b) motion, and found that section 654 did not preclude consecutive sentencing for elder abuse and making criminal threats. The court sentenced defendant to three years eight months in prison, consisting of the middle term of three years for elder abuse (§ 368,

2

subd. (b)(1)) and eight months for making criminal threats (one-third the middle term; §§ 422, subd. (a), 1170.1, subd. (a), 1170, subd. (h)(1)).[2]

## II. DISCUSSION

Defendant acknowledges that he committed multiple criminal acts by physically assaulting his father and also threatening him. Defendant argues that section 654 nonetheless precludes the sentence imposed by the trial court because his criminal acts constituted an indivisible course of conduct that was motivated by a single intent and objective.

Section 654, subdivision (a) provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Section 654 applies " ' "not only where there was but one 'act' in the ordinary sense ... but also where a course of conduct violated more than one statute and the problem was whether it comprised a divisible transaction which could be punished under more than one statute within the meaning of section 654." ' " (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208.) " 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the *intent and objective* of the actor.' " (*Ibid.*) We review a trial court's application of section 654 for substantial evidence. (*People v. Brents* (2012) 53 Cal.4th 599, 618.)

Defendant's intent and objective in physically assaulting his father is clear: he intended to hurt his father. As for defendant's threats to kill his father and harm other family members, the trial court could reasonably conclude that defendant had the separate intent and objective of frightening his father. These severable objectives are illustrated by looking at the required elements of elder abuse and making criminal threats. A person

---

[2] The court imposed a concurrent three-year middle term for the assault conviction. (§ 245, subd. (a)(4).)

3

commits elder abuse by, among other things, inflicting "unjustifiable physical pain" upon an elderly person.  (§ 368, subd. (b)(1).)  Making criminal threats, on the other hand, requires no infliction of physical pain and instead punishes any person "who willfully threatens to commit a crime which will result in death or great bodily injury to another person" with the specific intent that the statement is to be taken as a threat "even if there is no intent of actually carrying it out ... ."  (§ 422, subd. (a).)  Thus, defendant did not need to physically assault father to make a criminal threat; nor did he need to frighten his father to commit elder abuse.

Defendant's focus on the temporal proximity of the two crimes does not change our analysis.  " 'It is defendant's intent and objective, not the temporal proximity of his offenses, which determine whether the transaction is indivisible.' "  (*People v. Hicks* (1993) 6 Cal.4th 784, 789.)  Though the two crimes occurred in quick succession, substantial evidence supported the trial court's conclusion that defendant's actions were divisible because each was motivated by a different intent and objective.

### III.    DISPOSITION

The judgment is affirmed.

4

_____

Grover, J.

**WE CONCUR:**

_____

Rushing, P.J.

_____

Premo, J.