[No. C002748. Third Dist. May 24, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
PRENTISS CARMICHAEL BOOTH, Defendant and Appellant.

1500

**COUNSEL**

Abby Pruitt, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, W. Scott Thorpe and Carlos A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MARLER, J.**—Based upon charges arising out of three separate incidents, defendant pleaded guilty to: rape of Dorothy K. (Pen. Code, § 261, subd. (2)—count I)[1] and to the burglary of her residence (§ 459—count II); burglary (§ 459—count III), assault with intent to commit rape (§ 220—count IV), and assault by means of force likely to produce great bodily injury (§ 245, subd. (a)—count V), these three counts involving Phyllis T. and her residence; rape (§ 261, subd. (2)—count VI), assault by means of force likely to produce great bodily injury (§ 245, subd. (a)—count VII), burglary (§ 459—count VIII), and attempted murder (§§ 664, 187—count IX), these four counts relating to Felicia G. and her residence. With respect to the assault with intent to commit rape (count IV) he admitted intentionally inflicting great bodily injury (§ 12022.7) and using a deadly weapon (§ 12022, subd. (b)) and as to the rape in count VI he admitted inflicting great bodily injury and using a deadly weapon in the commission of that offense (§§ 12022.8; 12022.3, subd. (a), respectively).

---

[1] All section references are to the Penal Code unless otherwise specified.

Defendant was sentenced to thirty-seven years in state prison as follows: Pursuant to section 1170.1 he received the upper term of six years for the assault with intent to commit rape in count IV, plus a three-year enhancement (§ 12022.7);[2] for the burglaries in counts II, III, and VIII, consecutive terms totalling four years were imposed (one-third of the midterm of four years for each); for each of the aggravated assaults in counts V and VII the midterm of three years was imposed but stayed; and for the attempted murder in count IX the midterm of seven years was imposed then stayed. The total unstayed sentence under section 1170.1 was 13 years.[3]

Pursuant to section 667.6, subdivision (d), defendant received upper consecutive terms of eight years for the rapes in counts I and VI, with five- and three-year enhancements for the admissions under sections 12022.8 and 12022.3, subdivision (a). This term totals 24 years.

Relying on section 654 and *People* v. *Wein* (1977) 69 Cal.App.3d 79 [137 Cal.Rptr. 814], defendant appeals from the sentence and contends the trial court erred in not fully staying the terms imposed on the three burglary counts. We conclude defendant was properly sentenced and shall affirm.

On April 16, 1985, defendant entered the home of 63-year-old Dorothy K., placed a towel over her face, began choking her, and then pulled her into the bedroom where he raped her. He thereafter fled; however, she was able to obtain the license plate number of his vehicle. She also discovered her purse was open and $75 was missing.

On April 17 defendant gained entry into the home of 60-year-old Phyllis T., grabbed her and warned, "Shut up or I'm going to kill you." He ripped off her smock, forced her into a bedroom where he choked her with a ribbon and told her she would never reach 61. He hit her and told her to stop screaming. When he was unable to complete an attempted act of intercourse he picked up a heavy iron doorstop and began striking her with it. She pleaded with him and told him she had money. When he went to find it she escaped and made her way to a neighbor's home.

On April 18 defendant gained entry to the home of Felicia G. by a ruse, warned her not to scream and told her repeatedly, "You're dead," and "You're going to die." He raped her, choked her with his hands and an electric cord, and forcibly inserted a coat hanger in her ear. She feigned death, whereupon defendant took $14 from her purse and left.

---

[2] The additional one-year enhancement under section 12022, subdivision (b), was stayed.

[3] All stayed sentences and enhancements were pursuant to section 654.

■ The proper application of section 654[4] to multiple offenses is set forth in *People* v. *Beamon* (1973) 8 Cal.3d 625 [105 Cal.Rptr. 681, 504 P.2d 905]: "The *Brown-Neal*[5] test thus appears to enlarge the literal language of section 654 by including as an 'act or omission' a course of criminal conduct wherein multiple violations are incidental to an accused's single criminal objective. On the other hand, when an accused has embarked upon a course of conduct wherein he may be deemed to have entertained multiple criminal objectives none of which are merely incident to any other, the meaning of 'act or omission' has been construed in a manner consistent with that multiple objective and what may appear on the surface to be a single act may embody separately punishable violations. We must, accordingly, give heed to an accused's objectives when they can be ascertained. . . . [¶] . . . The initial inquiry in any section 654 application is to ascertain the defendant's objective and intent. If he entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." (*Id.,* at pp. 638-639.)

■ In support of his contention that section 654 requires the staying of the full terms for the burglaries, defendant claims "there is no evidence [defendant] entered the residences with the intent to do anything other than sexually assult the victims."

The record is to the contrary. Not only is it a reasonable inference to be drawn from the factual basis for defendant's pleas and admissions, as recounted above, that his objectives at the time he entered the residences of his victims were to both steal from them and sexually assault them, but defendant expressly told the probation officer his initial intention was to "burglarize" the homes and that the sexual attacks were not planned. Moreover, defendant pleaded guilty to the burglaries as charged in the amended information—indeed each of the charges was read to defendant immediately before he entered his guilty pleas. As charged, the burglaries each alleged that defendant entered the victims' residences "with the intent to commit theft and a felony therein." Given these circumstances, it was well within the court's province to conclude that defendant entertained the dual objectives of rape and theft when entering the victims' residences.

Defendant's reliance on *People* v. *Wein, supra,* 69 Cal.App.3d 79 is misplaced inasmuch as *Wein* constitutes an erroneous application of section 654.

---

[4] In relevant part section 654 provides: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one . . . ."

[5] *Neal* v. *State of California* (1960) 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839]; *People* v. *Brown* (1958) 49 Cal.2d 577, 591 [320 P.2d 5].

Insofar as is relevant, the defendant in *Wein* was convicted of robbery, burglary, forcible oral copulation and attempted murder based upon his entry into the home of Miss D. and commission of the assaultive offenses upon her. The judgment provided that the sentences for robbery, burglary, and oral copulation were to be "merged" with each other, and this single "merged" sentence was to be served concurrently with the charge of attempted murder.[6] Purportedly relying on section 654 and *People v. Miller* (1977) 18 Cal.3d 873 [135 Cal.Rptr. 654, 558 P.2d 552], the *Wein* court modified the judgment to provide that the sentences for robbery and forcible oral copulation were to be stayed pending successful service of the burglary charge. The justification for this modification was, "As to the multiple convictions for crimes against Miss D[.] the charge of attempt[ed] murder because of a distinctly different criminal objective is separate and divisible from the other offenses of burglary, robbery and forcible oral copulation but the latter three are not separate and distinct from each other and arose out of one indivisible course of conduct." (*Wein, supra,* 69 Cal.App.3d at p. 94.)

Without explanation the *Wein* court concluded that defendant's entry into the victim's home and his perpetration of the assaultive offenses, aside from the attempted murder, constituted "one indivisible course of conduct."

Under existing legal principles the robbery and forcible oral copulation do not constitute "an indivisible course of conduct." "Whether a course of conduct is indivisible depends upon the intent and objective of the actor. [Citation.] If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one . . . . [¶] On the other hand, if the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for the independent violations committed in pursuit of each objective even though the violations were parts of an otherwise indivisible course of conduct." (*People v. Perez* (1979) 23 Cal.3d 545, 551 [153 Cal.Rptr. 40, 591 P.2d 63]; fn. omitted.) Clearly, the robbery and forcible oral copulation incidents at issue in *Wein* are acts requiring different objectives and it is inconceivable that one may be incidental to the other in its commission.

Further, *People v. Miller, supra,* 18 Cal.3d 873 does not support the *Wein* court's holding. In *Miller* the defendant entered a jewelry store and at gunpoint took jewelry from an employee and shot a security guard. He was

---

[6] In the same proceeding, the defendant was also convicted of the first degree murder of another woman for which he received a sentence of life imprisonment. (*Wein, supra,* 69 Cal.App.3d at p. 93.)

convicted of robbery of the employee, first degree burglary with a finding that in the course of the burglary he intentionally inflicted great bodily injury on an occupant of the burglarized premises (i.e., the guard),[7] and assault with a deadly weapon upon the guard. The court held that while the defendant was properly sentenced for both the robbery and the aggravated burglary due to each offense having a different victim, the sentence on the assault count must be stayed pursuant to section 654 because the assault and the aggravated burglary involved the same victim (the guard) and the defendant had received additional punishment for the burglary. (*Id.,* at pp. 885-886.) In other words, since the defendant's *single act* of assault brought him within the scope of two penal provisions—aggravated burglary and assault with a deadly weapon—he could be punished for one but not for both. This is wholly unlike the circumstances of *Wein* wherein the robbery and the forcible oral copulation were separate acts requiring different objectives.

A situation analogous to the present case is set forth in *People* v. *Davis* (1987) 191 Cal.App.3d 1365 [236 Cal.Rptr. 887]. In *Davis* the defendant forced his way into the victim's van, told her he had a gun and would shoot her if she screamed. After driving a short distance he demanded and received money from her, then proceeded to an unpopulated area where he raped her. A jury convicted him, as to this victim, of kidnapping to commit robbery (§ 209, subd. (b)); simple kidnapping (§ 207), enhanced by a finding the kidnapping was for the purpose of rape (§ 667.8); rape (§ 261, subd. (2)); and robbery (§ 211). The trial court sentenced the defendant to a life term for kidnapping for the purpose of robbery, eight years for the rape with a three-year enhancement under section 667.8. The simple kidnapping and robbery counts were stayed by the court under section 654.

Against a challenge that the sentence on the rape must also be stayed under section 654,[8] the *Davis* court upheld the sentencing as proper under *People* v. *Beamon, supra,* 8 Cal.3d at page 639, and *People* v. *Perez, supra,* 23 Cal.3d at page 551. This was so because the defendant entertained

---

[7] In November 1973, the date upon which the *Miller* defendant committed the offenses, Penal Code section 461 provided: "Burglary is punishable as follows: [¶] 1. Burglary in the first degree: by imprisonment in the state prison for not less than five years. [¶] 2. Burglary in the second degree: by imprisonment in the county jail not exceeding one year or in the state prison for not less than one year or more than 15 years. [¶] The preceding provisions of this section notwithstanding, in any case in which defendant committed burglary and in the course of commission of the burglary, with the intent to inflict such injury, inflicted great bodily injury on any occupant of the premises burglarized, such fact shall be charged in the indictment or information and if found to be true by the jury, upon a jury trial, or if found to be true by the court, upon a court trial, or if admitted by the defendant, defendant shall suffer confinement in the state prison from 15 years to life."

[8] The reviewing court reversed the simple kidnapping count due to its being a lesser included offense in the kidnapping for the purpose of robbery conviction.

multiple criminal objectives; and even if the kidnapping was common to both offenses, the rape and robbery were not merely incidental to each other.

The facts of the present case support the determination that defendant entered the victims' homes with the intention of achieving two objectives— to rape and to steal.[9] Such dual intent precludes a finding as to each victim that his entry into their homes and his sexual assaults constituted an indivisible course of conduct to which section 654 is applicable.

The judgment is affirmed.

Puglia, P. J., and Sims, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 10, 1988.

---

[9] Defendant also argues a lack of intent to commit theft because the trial court, pursuant to section 995, dismissed two counts of robbery (victims Dorothy K. and Felicia G.) which were charged in the original information and because the People did not charge defendant with any theft offenses. The basis for defendant's section 995 motion was not that nothing was stolen from the victims, rather that the ground urged was an insufficient showing of the element of force or fear in the takings. Nor is it material that for some unspecified reason the People chose not to charge defendant with theft. The crucial point is that the record amply supports, if not compels, the conclusion that defendant had both the intent to steal and to sexually assault at the time he entered the victims' residences.