Filed 11/20/23  P. v. Apodaca CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JAMES LEWIS APODACA,<br><br>    Defendant and Appellant. | 2d Crim. No. B322180<br>(Super. Ct. No. 2021022675)<br>(Ventura County) |

James Lewis Apodaca appeals a judgment following conviction of kidnapping with the intent to commit rape, second degree robbery, assault with a deadly weapon upon a police officer, exhibition of a deadly weapon to a police officer, and possession of methamphetamine, with findings of two prior felony strike convictions.  (Pen. Code,[1] §§ 209, subd. (b)(1), 211, 245, subd. (c), 417.8, 667, subds. (b)-(j), 1170.12, subds. (a)-(d); Health & Saf. Code, § 11377, subd. (a).)  We modify the judgment to

_____

[1] All statutory references are to the Penal Code unless otherwise stated.

reflect a total award of 393 days of presentence custody credit, but otherwise affirm.  (*People v. Koontz* (2002) 27 Cal.4th 1041, 1094 [no errors found to cumulate].)

*FACTUAL AND PROCEDURAL HISTORY*

This appeal involves the kidnapping with the intent to rape of a young woman and the theft of her cell telephone.  Apodaca shoved the woman into the trunk of his vehicle and drove several miles away.  A sheriff's deputy on routine patrol responded to the woman's screams from the vehicle trunk and stopped the vehicle.  When confronted by the deputy, Apodaca brandished a four-foot metal pipe or bar.  On appeal, Apodaca raises arguments of substantial evidence and claimed errors regarding pornography evidence, self-defense jury instructions, and sentencing.  We reject his arguments except for the award of additional presentence custody credit.

In the late evening of August 28, 2021, 20-year-old T.W. rode her bicycle to a liquor store in Ojai to see a friend.  At the same time, Apodaca drove to the liquor store and parked.  Apodaca saw T.W. and asked if she wanted to smoke marijuana.  She responded affirmatively and Apodaca invited her to sit inside his vehicle.  T.W. declined but suggested that he drive to the parking lot behind the adjacent restaurant.  She followed his vehicle with her bicycle.

T.W. entered the front passenger seat of Apodaca's vehicle, but kept the door open.  Apodaca said he kept the marijuana under the lining in the vehicle's trunk.  They walked to the trunk to remove the lining.  As T.W. was leaning into the trunk, using her telephone as a flashlight, Apodaca took her telephone, pushed her inside, and closed the trunk.  He then played music loudly over her cries and drove away.

2

T.W. soon found the emergency release lever inside the trunk and began yelling for help and waving her arms. Apodaca drove past Deputy Sheriff Julian Fergerson who pursued Apodaca's vehicle. When Apodaca stopped his vehicle, T.W. ran from the vehicle's trunk to the deputy. She informed him that Apodaca had taken her telephone and pushed her inside the trunk.

Apodaca refused Fergerson's commands to stay inside his vehicle and fled through a neighborhood. Fergerson pursued Apodaca, deployed his taser three times, and sprayed him with pepper spray. Apodaca picked up a four-foot metal bar or pipe and swung it at Fergerson. A second sheriff's deputy responded and successfully deployed his taser to subdue Apodaca. Footage from the deputies' body cameras captured the pursuit and Apodaca's arrest and was played at trial.

Deputies searched Apodaca's vehicle and found methamphetamine, T.W.'s cell telephone, and a second cell telephone. A container of petroleum jelly was inside the center console of the vehicle. The second telephone contained accounts under Apodaca's name, photographs of him, and text messages between him and his girlfriend. The telephone also reflected that pornographic Web sites had been accessed near the time of Apodaca's encounter with T.W. In addition, the telephone contained two cached pornographic images of sexual assault that were downloaded from a rape Web site.

At trial, the parties stipulated that on July 26, 2006, Apodaca was convicted of assault with intent to commit oral copulation pursuant to section 220. That crime occurred in 2005.

Apodaca testified at trial and denied that he kidnapped T.W. or intended to rape her.

Apodaca also testified that he allowed another woman to use his telephone that day and that she provided him with methamphetamine. He stated that he saw T.W. at the liquor store and she recognized him because she knew his daughter. Apodaca testified that T.W. asked him for marijuana and he responded that he had marijuana in the trunk of his vehicle.

Apodaca stated that T.W. looked for the marijuana in the trunk but then entered the trunk, closed it, and refused to leave. Apodaca saw two men looking in his direction and believed that they intended to rob him. For that reason, he drove away with T.W. inside the trunk. When he saw Deputy Fergerson, he stopped and reported that he was being robbed. Apodaca stated that T.W.'s complaints to Fergerson were false.

Apodaca also testified that he used the metal pipe or bar only to remove the taser wires from his body: "I took the wire off with that [metal] bar." He denied swinging the pipe or bar at Fergerson.

Apodaca stated that the telephone that he was using belonged to his girlfriend and he had borrowed it. He denied accessing pornography on the telephone and stated that an older woman had used his telephone that day. The older woman also left methamphetamine in his vehicle.

The jury convicted Apodaca of kidnapping with the intent to commit rape, second degree robbery, assault with a deadly weapon upon a police officer, exhibition of a deadly weapon to a police officer, and possession of methamphetamine. (§§ 209, subd. (b)(1), 211, 245, subd. (c), 417.8; Health & Saf. Code, § 11377, subd. (a).) The jury also found a personal weapon use allegation and aggravating circumstances true. In a separate

proceeding, Apodaca admitted suffering prior felony and strike convictions and serving a prior prison term.

The trial court sentenced Apodaca to a second-strike prison term of six years plus a third strike consecutive term of 75 years to life. The court imposed and stayed sentence regarding the crime of exhibiting a deadly weapon to a police officer. It also struck its findings regarding the remaining prior convictions and prison term.

Apodaca appeals and contends that: 1) insufficient evidence supports his conviction of kidnapping with the intent to rape; 2) the trial court erred by admitting evidence of cached pornographic images from his cell telephone; 3) the trial court erred by not instructing sua sponte regarding self-defense; 4) section 654 precludes a separate sentence for second degree robbery; and 5) his presentence custody credit fails to include 15 percent conduct credit.

## DISCUSSION

### I.

Apodaca argues that his aggravated kidnapping conviction violates his federal due process rights because insufficient evidence exists that he intended to rape T.W. He points out that there is no evidence of his sexual advances or sexual comments toward T.W. or any attempts to remove her clothing. (E.g., *People v. Greene* (1973) 34 Cal.App.3d 622, 648-654 [insufficient evidence that defendant assaulted victim with intent to rape].)

In reviewing the sufficiency of evidence to support a conviction, we examine the entire record and draw all reasonable inferences therefrom in favor of the judgment to determine whether there is reasonable and credible evidence from which a reasonable trier of fact could find the defendant guilty beyond a

reasonable doubt. (*People v. Thomas* (2023) 14 Cal.5th 327, 377; *People v. Brooks* (2017) 3 Cal.5th 1, 57.) We do not redetermine the weight of the evidence or the credibility of witnesses. (*People v. Albillar* (2010) 51 Cal.4th 47, 60; *People v. Young* (2005) 34 Cal.4th 1149, 1181 ["Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact"].) We must accept logical inferences that the trier of fact might have drawn from the evidence although we may have concluded otherwise. (*People v. Rivera* (2019) 7 Cal.5th 306, 331.) "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*Albillar*, at p. 60.) In our review, we focus upon the evidence that was presented, rather than evidence that might have been but was not presented. (*People v. Story* (2009) 45 Cal.4th 1282, 1299.)

Sufficient evidence and reasonable inferences therefrom together establish that Apodaca kidnapped T.W. with the intent to commit rape. Apodaca suffered a previous conviction for assault with the intent to commit oral copulation, another forcible sex offense. The telephone registered to him, which he had been using shortly before T.W.'s abduction, contained two cached images of sexual assault (one labeled "rapesection") and a rape video. Apodaca had also accessed Web site pornography for several hours prior to the kidnapping, including "teen pussy" pornography. T.W., a vulnerable victim, was 20 years old and riding a bicycle when she encountered Apodaca at night. Deputies also found a container of petroleum jelly in the center console of Apodaca's vehicle. We do not redetermine the credibility of witnesses, reweigh the evidence, or substitute

6

different reasonable inferences for those drawn by the trier of fact.  (*People v. Thomas*, *supra*, 14 Cal.5th 327, 377-378.)

II.

Apodaca contends that the trial court abused its discretion and committed prejudicial error by admitting photographic evidence of two cached sexual assault images from his cell telephone in addition to evidence of a cached rape pornography video (itself not admitted).  (The prosecutor also presented evidence that Apodaca accessed Web site pornography on the telephone for two and one-half hours before his crimes against T.W.)  Apodaca objected to admission of this evidence on grounds of undue prejudice and foundation regarding telephone ownership.  He asserts that the evidence violated his constitutional right to due process of law pursuant to the federal Constitution and *Chapman v. California* (1967) 386 U.S. 18, 24-26.

We review a trial court's ruling admitting evidence for an abuse of discretion.  (*People v. Memro* (1995) 11 Cal.4th 786, 864; *People v. Byers* (2021) 61 Cal.App.5th 447, 453 [no abuse of discretion in permitting evidence that defendant viewed pornographic videos prior to kidnapping victim].)  A trial court's decision to admit photographs pursuant to Evidence Code section 352 will be upheld on appeal unless the prejudicial effect of such photographs clearly outweighs their probative value.  (*People v. Thomas*, *supra*, 14 Cal.5th 327, 372.)

Possession of pornography is properly admitted when its relevance to motive or intent is not outweighed by its undue prejudice.  (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1100-1102 [evidence of titles of defendant's pornographic magazines and videotapes relevant to his intent and motive when he abducted

7

victim]; *People v. Byers*, *supra*, 61 Cal.App.5th 447, 453-454 [evidence of "topics" in defendant's pornographic videos relevant to defendant's motive and intent in kidnapping and sexually assaulting victim].)

Here the photographic evidence was relevant to Apodaca's motive and intent when he kidnapped T.W. Although there was no evidence concerning if or when Apodaca personally saved or viewed the cached images, he currently possessed the images on a cell telephone registered to him. Arguments regarding other reasonable inferences to be drawn from the evidence concern the weight, not the admissibility, of this evidence. (*People v. Fauber* (1992) 2 Cal.4th 792, 853.) The trial court did not abuse its discretion in admitting the two still photographs depicting sexual assault.

Moreover, admission of the evidence did not violate Apodaca's right to due process. "[T]he Due Process Clause guarantees the fundamental elements of fairness in a criminal trial." (*Spencer v. Texas* (1967) 385 U.S. 554, 563-564.) *Spencer* held that evidence of prior convictions did not violate due process in light of state procedures to weigh the usefulness of the evidence against its prejudicial effect. (*Id.* at pp. 562-563.) The trial court here weighed the probative value of the evidence against its prejudicial effect. It then admitted the evidence as relevant to Apodaca's motive and intent and concluded it was not unduly prejudicial. This is not "one of those rare and unusual occasions where the admission of evidence has violated federal due process and rendered the defendant's trial fundamentally unfair." (*People v. Albarran* (2007) 149 Cal.App.4th 214, 232.)

8

*III.*

Apodaca argues that the trial court erred by failing to instruct sua sponte regarding his right to use self-defense against excessive force employed in his arrest. He contends that the error violated his federal constitutional rights to due process, a jury trial, and right to present a defense regarding the assault and brandishing charges. Apodaca adds that the error is prejudicial pursuant to *Chapman v. California, supra,* 386 U.S. 18, 24-26.

In criminal cases, the trial court must instruct sua sponte on the general principles of law relevant to the issues raised by the evidence. The court may refuse instructions, however, that are argumentative, duplicative, confusing, or not supported by substantial evidence. (*People v. Burney* (2009) 47 Cal.4th 203, 246.)

The trial court was not required to instruct regarding self-defense against excessive force because there was insufficient evidence that Apodaca brandished a metal pipe or bar at Fergerson in self-defense. Apodaca testified that "[t]he only purpose" of the metal bar was "to take out the taser:" "[T]hat pipe saved my life. That's all I used it for was to take out the taser." Apodaca denied threatening or swinging the bar at Fergerson: "[E]very time he was tasing me, I was swinging it trying to get the wire off."

We do not consider hypothetical factual scenarios raised for the first time on appeal. (*People v. Hinton* (2006) 37 Cal.4th 839, 896-897.) Apodaca has forfeited these factual arguments by failing to present and develop the evidence and arguments at trial regarding alleged excessive force and self-defense. The trial court gave use-of-force and assault with a deadly weapon on a

9

police officer instructions here (CALCRIM Nos. 900, 2670, 3145) and correctly explained the applicable use-of-force law. The court was not required to instruct sua sponte on "excessive force" that did not exist in this case.

*IV.*

*Sentencing Contentions*

Apodaca asserts that the punishment for his second degree robbery conviction is precluded by section 654 because the forceful taking of T.W.'s telephone arose from a single course of conduct, i.e., kidnapping with the intent to rape her. He asserts that the claimed unauthorized sentence violates his constitutional right to federal due process of law.

Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends upon the intent and objective of the actor. (*People v. Jackson* (2016) 1 Cal.5th 269, 354.) If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one. (*Ibid.*; *People v. Correa* (2012) 54 Cal.4th 331, 336.) Intent and objective are factual questions for the trial court which must find evidence to support the existence of a separate intent and objective for each sentenced offense. (*Jackson*, at p. 354.)

The evidence supports the trial court's imposition of separate punishment. Apodaca committed two distinct crimes of violence against T.W. – kidnapping and robbery. The crimes were accomplished through separate actions, not the same physical action. The crimes also involved independent criminal intents. Although Apodaca may have taken the telephone to prevent T.W. from reporting the kidnapping, a reasonable inference from the evidence is that he also took the telephone and

10

placed it inside his vehicle as an act of theft. (*People v. Booth* (1988) 201 Cal.App.3d 1499, 1502 [dual objectives of rape and theft when entering the victims' homes supported separate punishment for burglaries and rapes].) This evidence is sufficient to support the court's express factual determination of independent intents and objectives. (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143 [substantial evidence review of trial court's section 654 determination].)

Apodaca also argues that the trial court erred by not awarding 51 days of presentence conduct credit pursuant to sections 4019 and 2933.1. (*People v. Jones* (2000) 82 Cal.App.4th 485, 493-494.) The Attorney General correctly concedes. Accordingly, we order Apodaca's sentence modified to include an additional 51 days of presentence credit.

*DISPOSITION*

The judgment is modified to reflect a total award of 393 days of presentence custody and conduct credit, but otherwise affirmed. The trial court shall correct the sentencing minutes and the abstract of judgment and forward the amended documents to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


BALTODANO, J.        CODY, J.


11

Ryan J. Wright, Judge

Superior Court County of Ventura

_____

Joshua L. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews, Michael J. Wise and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.